## Reading v. Berks County, Appellant.

*Taxation—Park—Land for water supply—Exemption—County—Township—City.*

Where a city owns real estate situated in an adjoining township, part of which it uses to secure the purity of its water supply, and part for the use and enjoyment of the public as a park, such real estate is not taxable for county, school or road purposes, either by county, school district or township.

Argued Nov. 14, 1902.   Appeal, No. 208, Oct. T., 1902, by defendants, from decree of C. P. Berks Co., Equity Docket, 1902, No. 809, on bill in equity in case of Reading v. Berks County, Lower Alsace Township and John R. Folk, Tax Col-

374    READING *v.* BERKS COUNTY, Appellant.

Statement of Facts—Opinion of Court below. [22 Pa. Superior Ct.

lector. Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an injunction to restrain the collection of a tax.

On motion to dissolve preliminary injunction, SWARTZ, P. J., specially presiding, filed the following opinion:

The application to dissolve the preliminary injunction was heard upon the allegations of the bill, no testimony having been offered by either party.

The city of Reading is a city of the third class. In 1865 it purchased the waterworks of the Reading Water Company, and since that date it has operated, reconstructed and enlarged the works, and supplied its citizens with water. In the course of the construction of its waterworks it erected and maintained reservoirs, receiving and distributing basins, in the township of Lower Alsace, in the county of Berks. It also maintains in said township a dam known as Antietam lake, and acquired some real estate immediately contiguous to said lake.

The bill alleges that all of said public works and real estate, situate in the township of Lower Alsace, and constituting part of the waterworks of the complainant, were assessed for county, road and school taxes. The taxes so levied aggregate $141. The city of Reading having failed to pay the same, the tax collector seized certain personal property of the complainant in said township to enforce the payment of the taxes. The property was advertised for sale, and this bill was filed to restrain the collector from disposing of the goods.

The complainant alleges that all of the said lands and public works "are owned and operated solely for the supply of water to the public and for no other purpose whatsoever."

Is the said property of the city, under the allegations, liable to taxation?

Prior to 1873 the property in question was not taxable so far as it was used for public purposes. "The public is never subject to tax laws and no portion of it can be, without express statute; no exemption is needed for any public property held as such:" Poor Directors v. School Directors, 42 Pa. 21. Property owned by a municipality and used for public purposes is

not taxable : County of Erie v. City of Erie, 113 Pa. 360. A municipality does not lose its identity by engaging in the business of furnishing water to its inhabitants : Lehigh Water Co.'s Appeal, 102 Pa. 515.

It is conceded that prior to the decision in the County of Erie v. The Commissioners of Water Works of Erie, 113 Pa. 368, municipal property held for public purposes was not subject to a county tax.

In the case just cited, the city of Erie was made liable because the proviso clause in the Act of May 14, 1874, P. L. 158, created a liability. There was no prior existing right to levy such tax against the waterworks of Erie city. The right to tax was based solely upon the proviso clause of the act of 1874.

This proviso in the act of 1874, under which the waterworks of the city of Erie were held liable to a county tax, was declared unconstitutional in Sewickley Boro. v. Sholes, 118 Pa. 165. It followed that the waterworks of this borough were not liable for the county tax imposed, although the borough received a revenue in the form of water rents just as in the case of the city of Erie. In the Sewickley case the court reaffirmed the doctrine that a municipality owning public waterworks is not liable to taxation, even where revenue is derived from the works.

Counsel for the defendants contend that Sewickley Boro. v. Sholes, 118 Pa. 165, so far as that case has any bearing upon the question before us, is overruled in Philadelphia v. Barber, 160 Pa. 123.

The case just cited reaffirms the unconstitutionality of the proviso clause in the act of 1874, but calls attention to the fact that the Act of April 8, 1873, P. L. 64, was omitted and not even referred to in the Sewickley case. An intimation is given in the opinion of the court that the tax imposed on the waterworks of Sewickley borough may be sustained under the act of 1873, notwithstanding the fact that the proviso clause in the act of 1874 is void. This inquiry was not within the scope of the questions raised in Philadelphia v. Barber, and the court is careful to say that the act of 1873 may have no controlling power to impose a tax upon municipal property held for public use, because " property owned by municipal bodies and used for public purposes is never subject to tax laws unless the legislative intent to include it is clear."

Does the Act of April 8, 1873, P. L. 64, impose on the municipal property held for public purposes a liability to pay taxes when no such liability existed prior to its enactment?

The title of the act declares the purpose of the statute. It reads : "An act to repeal all laws exempting real estate from taxation." Municipal property used for public purposes does not enjoy its freedom from taxation by reason of an act of assembly exempting such property from taxation. As already shown, public property is not subject to tax laws. It requires an express statute to make it taxable. The act of 1873, therefore, can have no application to the property under consideration.

There was no act exempting such property from taxation ; and there is therefore no exemption upon which the repealing statute of 1873 can act so far as this class of property is concerned. The act is intended to revise and restore former conditions. It does not mean to impose a tax upon a new class of property. That this is the correct interpretation of the act of 1873, is shown in Northampton County v. Lehigh Coal, etc., Company, 75 Pa. 461, where the court says, "the object of the act of 1873 was not to change the course of judicial decision upon the construction of the general tax laws, but to repeal the large number of special acts upon the statute books exempting particular properties." Again, the act of 1873 "provided only against the exception of real estate that was then, or might thereafter be, liable to taxation by general laws :" Rounds v. Waymart Borough, 81 Pa. 395. We conclude that the failure to note and consider the act of 1873 in Sewickley Boro. v. Sholes, 118 Pa. 165, cannot affect that decision which declares that municipal property used for public purposes is not liable for a county tax.

Counsel for defendants claim that part of the city's property in Lower Alsace township consists of farm lands, located within the watershed of Antietam creek, and that such farms are not necessary for the operation of the waterworks of the city. This may be the fact, but there is nothing before us upon which we may base such finding. The bill alleges that the property is immediately contiguous to Antietam lake, and that all property in the township constitutes the public waterworks of the city. The true state of affairs can be ascertained upon

final hearing, and it may then appear that certain real estate in the township owned by the city is not indispensably necessary and absolutely essential to enable the city to operate properly its waterworks. Under such a finding it may well be that some of the property of the city is taxable just as that of any private owner of the township. The rule laid down in Roaring Creek Water Co. v. Girton, 142 Pa. 92, and Spring Brook Water Co. v. Kelly, 17 Pa. Superior Ct. 347, may be applicable to a municipality supplying water to its citizens.

The bill alleges that the tax was assessed and levied upon the whole property of the complainant, including reservoirs, receiving and distributing basins. We cannot allow the sale to proceed, for the collector has no right to apportion the assessment, and a new and corrected assessment entitles the owner to notice, and gives him the right to an appeal. As already stated, there is nothing before us to show that any of the property is liable to taxation.

And now, March 29, 1902, the motion to dissolve is overruled and the preliminary injunction is continued.

On final hearing SWARTZ, P. J., filed the following opinion:

The bill was filed to restrain the tax collector of Lower Alsace township from selling certain personal property of the city of Reading, levied upon to pay the taxes assessed on real estate owned by said city. In the bill filed the plaintiff alleges that the real estate of the city is not liable to taxation for county, school, or road purposes.

### FINDINGS OF FACTS.

1. The city of Reading is a city of the third class, in the county of Berks. In 1865 it purchased the waterworks of the Reading Water Company, and since that date it has operated, reconstructed, and enlarged the works, and supplied its citizens with water. In the course of the construction of its waterworks, it erected and maintained reservoirs, receiving and distributing basins in the adjoining township of Lower Alsace, in the county of Berks. The reservoir, or dam, in said township, is known as Antietam lake.

2. The lake is fed by several streams or brooks, and the surrounding land slopes toward the lake so that the surface drainage of the territory is carried into the lake or basin from which the citizens of Reading receive their water for domestic use.

3. At the time the city acquired and improved the land cov-ered by the reservoir, the slopes surrounding the lake were oc-cupied with farm buildings, and the land was cultivated for agricultural purposes.   The surface drainage from these build-ings and adjoining lands was carried into the brooks which supplied the lake or passed down the slopes directly into the reservoir.   The lands were plowed, manured and fertilized in the ordinary way, the falling rains carried pollution from the fields into the basin, although the farming was conducted in a proper manner and under the methods approved in good hus-bandry.

4. The water in the reservoir became so bad that it was con-demned for domestic purposes by the state board of health. The sources of pollution were pointed out, and in order to re-move them and secure pure water it was necessary for the city to acquire full control over the ground slopes surrounding the lake and its tributaries.   The city then purchased about 200 acres immediately surrounding the lake.   These holdings, with the lands already owned and covered by the waters of the basin and its tributaries, constitute about 240 acres.   The farm build-ings were then removed or suffered to remain vacant, and the surrounding fields were no longer tilled.   Under the changed condition a pure, healthful supply of water was secured.   There is no point where the city's ownership of land extends more than 1,000 feet from the shore or water line of the lake.

5. All the lands so owned by the city and surrounding the lake drain into the reservoir, with the exception of a small tract occupied by the watchman.   This forms a part of a larger tract, and the plot is assessed as a whole, and there are no facts before us whereby we can apportion the assessed value of this small tract which does not drain into the lake.   The watchman raises some vegetables for his own use upon a small part of the tract occupied by him, and has the use of the house as part compensation for his services as watchman.

6. No revenues are derived by the city from the land proper. Some little hay grows upon the uncultivated tracts.   This is consumed by the horses used in the water department.   Some-times there is a small surplus which is sold.   It is necessary to cut the grass, weeds, and growing rubbish to afford the best protection to the purity of the water in the reservoir.   The

orchards of the old farm lands at times produce an apple crop. This is distributed among the charitable institutions of the city.

7. The city collects water rents from its citizens for the water supplied to them. There is no evidence that the revenues so collected exceed the expense of operating, maintaining, and improving the water plant of the city. This annual revenue amounts to $175,000. The entire waterworks, including the property in Lower Alsace township, is under the control, supervision, and management of the board of water commissioners of the city of Reading.

8. When the lands surrounding the basin were returned for taxation, all lands not actually covered by the waters of the lake, or the waters of the brooks, were included in the assessment.

9. The city of Reading is also the owner of a tract of land containing about fifty-seven acres in Lower Alsace township, known as the Mineral Spring property. This ground was under the supervision of the water commissioners until the year 1893, when it was transferred to the board of county commissioners, to be used for park purposes. From that date the property is under the control of the park department of the city, and is used for public park purposes. The grounds are laid out in beautiful walks and driveways. The boulevard of the city passes through the premises. Pavilions, swings, benches, arched bridges, and other improvements were put in place for the comfort and enjoyment of the public. For years a house of public entertainment occupied a small part of this property. During all these years the house was licensed as a public inn, and it holds its license to this day. The person conducting the hotel pays an annual rental to the city for the use and occupancy of the buildings.

10. The whole fifty-seven acres were assessed for taxation, and there are no facts before us under which we can apportion the assessed value of that part of the tract used as a hotel and house for public entertainment.

11. The taxes levied on the lands surrounding the lake and on the Mineral Spring property aggregate $141. They include the county tax and the school and road taxes levied by the township of Lower Alsace for the year 1901. To collect these

taxes the collector seized certain personal property of the city and advertised the same for sale.

12. We find as a fact that it is necessary that the control and ownership of the land surrounding the lake should be in the city to secure the purity of the water supply from Antietam lake, that the use of the land for agricultural purposes, even under the exercise of all reasonable care, will pollute and contaminate the waters of the lake. The lake forms a settling pool for all the impurities that are drained into it from the immediate surface of the hillsides, and there is no flowage out of the lake to carry off the contaminating matters. This applies to all the holdings of the city about the lake, save the small tract in the occupancy of the watchman.

13. The greater part of the Mineral Springs property is a park, dedicated by the city for the use and enjoyment of the public. No other use is made of it, and no revenue whatever is derived by the city from the grounds. There is no evidence before us defining the relation of the public house to the public park, nor is there any evidence showing how far the house may be necessary for the enjoyment of those who visit the park. The value of the hotel premises apart from the whole tract is not given, nor can it be ascertained from the facts before us.

## CONCLUSIONS OF LAW.

1. The land surrounding Antietam lake is not taxable for county, school or road purposes because it is property owned by a municipality, and necessary for the public uses of the city, and in actual use for public purposes. The Act of April 8, 1873, P. L. 64, did not change the liability of a city and impose taxes upon property owned by the municipal bodies used for public purposes.

2. The Mineral Springs property, dedicated to park purposes for the public enjoyment, is not taxable. It is property owned by a municipality, used for park purposes only, and from which no revenue is derived.

3. If the watchman's plot and the public house on the Mineral Spring property are taxable, there is no method pointed out whereby we can separate the assessments of the whole tracts, so as to divide the good from the bad. The court has no authority to make an original assessment, and there are no

facts before the court upon which such an assessment can be based, even if we had the power to make it.

4. The plaintiff is entitled to a permanent injunction restraining the defendants from collecting the taxes levied under the assessment made for the year 1901, and restraining the said John R. Folk, tax collector, from all further proceedings against the personal property distrained to pay said taxes.

### DISCUSSION.

The evidence establishes that it is absolutely necessary for the city to own the land located immediately around the reservoir. There is no other method whereby the city can protect the waters from pollution.

It is said that the law abates nuisances. But how can the court declare it a nuisance to conduct a farm in an agricultural community in the usual ordinary methods and in the only manner a farm can be operated? The evidence shows that the exercise of all reasonable care on the part of the farmer will not protect the waters from pollution. The city has confined its holdings of lands within reasonable limits. Two hundred and forty acres cannot cover the whole watershed of Antietam lake and its tributaries. It cannot embrace more than the immediate slopes surrounding the lake and its feeders. If pure water is to be secured, it is just as necessary to control the lands surrounding the lake as it is to own the ground upon which the reservoir is constructed. When a municipality is invested with authority to acquire lands for a public water supply, the courts will not interfere with the discretion so given to the city and determine the acquisition unnecessary except in a clear case of abuse.

The lands of a corporation organized for profit are exempt from local taxation where such lands are essential to the carrying out of the public purposes of the corporation: St. Mary's Gas Co. v. Elk Co., 168 Pa. 401. The exemption from taxation applies with greater force to a city where its lands are essential to carrying out the public purposes of the municipality.

We prefer, however, to rest the case upon the well-established principle that " property owned by a municipality and used for public purposes is not taxable." In our opinion re-

fusing to dissolve the preliminary injunction this feature of the case was fully considered and we shall not repeat what was there stated. A further examination of the subject confirms us in the views then expressed. To hold that the Act of April 8, 1873, P. L. 64, imposed taxes on municipal property where no liability existed prior to the said enactment, is to overrule the interpretation given to the act of 1873, in Northampton County v. Lehigh Coal, etc., Co., 75 Pa. 461, and Rounds v. Waymart Borough, 81 Pa. 395.

We do not think that any expression in Phila. v. Barber, 160 Pa. 123, was intended to overrule Sewickley Boro. v. Sholes, 118 Pa. 165, and the lower courts, so far as our research extends, do not treat the Sewickley case as overruled or modified: Allegheny Township v. City of Altoona, 23 Pa. C. C. Rep. 381.

It is claimed that the exemption of the 240 acres from local taxation imposes an undue hardship upon the remaining real estate in Lower Alsace township. So far as there is any evidence before us, the land taken by the city may constitute so small a part of the township as not to appreciably affect local taxation. How far the acquisition of the city may relieve the township from providing school facilities or highway repairs for the land appropriated is not shown. Even if the burden of taxation is increased, this fact cannot overrule the long line of decisions exempting such property from taxation, for the objection now raised applied to many of the cases heretofore ruled.

In the late case of Sewickley Boro. v. Sholes, about eighty-seven acres of land were taken away from the township of Aleppo and relieved from taxation.

What was said concerning the land owned by the city to protect its water supply applies with equal force to the grounds dedicated for a public park. The claim for exemption has additional weight because the city derives no revenue from the park grounds.

While the park is owned by the city, it is maintained for the use of the public, and no doubt the citizens of Lower Alsace enjoy it in common with the residents of Reading. To tax the park grounds is in effect taxing a charity.

The house of the watchman and the lands appurtenant thereto is property owned by a municipality but not used for

public purposes.   It may be a convenience to the city to own the house occupied by its watchman, but the land does not constitute a part of its water plant and system.   We think this plot of about twelve acres is taxable : West Chester Gas Co. v. County of Chester, 30 Pa. 232 ; Schuylkill County v. Citizens' Gas Co., 148 Pa. 162.

We are aware that the cases cited were not municipalities but corporations organized for public purposes, the distinction however seems to us immaterial so long as the property owned forms no part of the necessary public works.   It is unnecessary to decide this branch of the case, for we cannot apportion the assessment so as to sustain this part of the taxation.   The watchman's tract was not assessed separately.

In like manner the Mineral Springs hotel with the buildings and grounds appurtenant thereto may be taxable.   How far this house of entertainment may constitute a necessary part of the park  may be a subject for consideration when the evidence is submitted upon this question.

For the reasons already given it is not necessary to decide this branch of the case, for the property is assessed as a whole, and we cannot separate the good from the bad, even had we the power to do so.   The bill was not filed to correct or modify the taxation, but to restrain the process instituted to collect tax of $140.

And now, August 26, 1902, it is ordered that the prothonotary enter a decree nisi against the defendants, restraining them by permanent injunction from all further proceedings to collect by distress, or otherwise, the county, road and school taxes of $141 levied against the plaintiff under the assessment heretofore made for the year 1901, with costs of suit against said defendants, and, unless exceptions are filed as provided by the equity rules, he will enter a final decree, as aforesaid, as of course.

The court subsequently entered a final decree for complainant.

*Error assigned* was the decree of the court.

*Edward S. Kremp* with him *H. L. Greenawalt,* for appellant.—The watershed of streams and dams cannot constitute part of the public waterworks because they are not indispensably necessary to carry on the works of furnishing

water to the appellee's citizens: Western New York & Penna. Ry. Co. v. Venango County, 5 Pa. Superior Ct. 304 ; Roaring Creek Water Co. v. Girton, 142 Pa. 92; Schuylkill Co. v. Citizens' Gas Co., 148 Pa. 162; Spring Brook Water Co. v. Kelly, 17 Pa. Superior Ct. 347 ; Erie County v. Commissioners of Waterworks, 113 Pa. 368; Philadelphia v. Barber, 160 Pa. 123.

*Walter S. Young,* for appellee.—The general statutes of the state, imposing taxation upon " all real estate," do not, by implication, include property held for public purposes by a municipality: Dillon on Municipal Corporations, sec. 614 ; Erie County v. Erie City, 113 Pa. 360 ; Roth v. School Directors, 83 W. N. C. 215 ; Lehigh Water Co.'s App., 102 Pa. 515.

The establishment and maintenance by a city of public parks is authorized by law, and property so acquired is held for public uses: Act of May 23, 1889, art. 5, sec. 34, P. L. 277 ; Act of June 24, 1891, P. L. 394 ; Act of June 26, 1895, P. L. 349.

OPINION BY BEAVER, March 12, 1903 :

The township of Lower Alsace adjoins the city of Reading. Within its borders are situate the intake dam or reservoir of the waterworks belonging to the city of Reading and a portion of land used as a public park. The municipal authorities of the township assessed for all the purposes of taxation for which real estate is liable to assessment all of the land owned by the city of Reading in connection with their waterworks, except the part actually covered by the dam, and all of the public park property. No appeal appears to have been taken from the assessment and, when taxes were levied and there was refusal to pay, the township authorities levied upon certain personal property within the bounds of the township.

A bill in equity was filed, praying for a preliminary injunction until hearing and perpetual thereafter. The preliminary injunction was granted and a careful opinion filed, Judge SWARTZ specially presiding, and, upon final hearing, findings of fact and conclusions of law, together with the reasons therefor, were also filed, covering the case very fully.

Assuming that both of the opinions of the court, together

with the findings of fact and conclusions of law will be published in the report of the case, it is not necessary to rediscuss the grounds or to recite the authorities upon which Judge SWARTZ founds his conclusions. The ground is fully covered and the authorities discriminately cited and discussed in these opinions. The findings of fact, which seem to be justified by the evidence in our opinion fully sustain the conclusions of law based thereon.

The land adjoining and surrounding the reservoir, known as Antietam lake, is found by the court to be a necessary part thereof, in order to preserve the purity of the water supply; and, being owned by a municipality and necessary for the public uses of the city and in actual use for public purposes, we agree with the conclusion that it is not taxable for county, school and road purposes. This conclusion is sustained by the authorities which are cited and fully discussed in the opinions of the court below.

It is possible that the watchman's house, used in connection with the reservoir property, and the mineral springs hotel situate within the public park may be subject to taxation but, inasmuch as there was no separate valuation of these properties, it was impossible for the court to apportion the taxes thereon and, as we understand the opinion, the conclusions reached are not to be construed as exempting these properties from taxation, if properly assessed, that question being left open for future consideration.

The reasons for the conclusion that public property, used for public purposes, is exempt from taxation are strikingly manifest in this case. The public park, so far as the testimony shows, is open to the citizens of Lower Alsace township, as well as to those of the city of Reading. The inhabitants of the township have as much use and benefit thereof, therefore, as do the citizens of the municipality which maintains the park, but without expense to them. The citizens of the township, at least when within the city limits, have use of the water of the city, without the payment of any tax therefor, whilst the citizens of Reading are subjected to a tax or water rate for its use. In these respects, therefore, the citizens of the township would seem to be in a better situation than the citizens of the city. The equities, as well as the law, would seem to be, therefore, with the plaintiff.

There is no need of further discussion and, upon reason and authority, we think the decree of the court below should stand. Decree affirmed and appeal dismissed at the cost of the appellant.

W. D. PORTER, J., dissents.