CITY OF OMAHA, APPELLEE, v. DOUGLAS COUNTY ET AL., APPELLANTS.

FILED SEPTEMBER 26, 1914.　No. 18,544.

Taxation: EXEMPTIONS: MUNICIPAL WATER-WORKS. The property of the municipality of Omaha, consisting of water-works used for a public purpose to supply the inhabitants of the city and its suburban towns and territory with water for domestic use and fire purposes, is not taxable under section 2, art. IX of the constitution.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. Affirmed.

*Myron L. Learned, Joseph T. Votava, R. H. Olmsted* and *George A. Magney,* for appellants.

*Benjamin S. Baker, W. C. Lambert, John A. Rine* and *L. J. Te Poel,* contra.

*John L. Webster,* amicus curiæ.

HAMER, J.

The appeals to this court are taken separately by the city of Omaha, the city of Florence, and School District No. 5. The city of Omaha appealed from the orders of the board of equalization to the district court for Douglas county, which held that the property over which the controversy existed was not subject to taxation under the constitution and laws of the state. From this last mentioned judgment the city of Omaha, the city of Florence,

96 Neb. 55

and School District No. 5 have appealed to this court. Each filed a motion for a new trial, which was overruled.

An examination of the pleadings and evidence discloses that Omaha became the owner of property outside of the city, from which it is alleged to derive a profit, and which is sought to be taxed. The authorities for Douglas county attempted to assess for the years 1912 and 1913 the property of the city of Omaha claimed to have been known as its water-works. The transcript recites: "In the matter of the appeal of city of Omaha from the order of the board of equalization of Douglas county, Nebraska, in retaining upon the assessment rolls for purposes of taxation real and personal property in South Omaha, Florence, and Dundee recently purchased from the Omaha Water Company by City of Omaha. *Original assessment return made by the county assessor.*"

Here follows a list of certain personal and real property: "In name of Omaha Water Company. Assessment year, 1912.

| | |
|---|---:|
| Personal property in South Omaha ............ | $609,500 |
| Personal property in Florence ................ | 723,950 |
| Personal property in Dundee ................ | 17,925 |
| Personal property in East Omaha ............ | 18,925 |
| Tax lot 1 & 2, sec. 21-16-13, Florence ......... | 19,850 |
| Improvements .......................... | 524,900 |
| Tax lot 2, sec. 28-16-13, Florence ........... | 11,550 |
| Lots 1 & 2 & part 3, block 126, Florence ...... | 200 |
| Lots 4 & 5, block 126, Florence ............. | 125" |

Then comes a protest filed June 28, 1912, addressed, "To the Honorable, the Board of County Commissioners of Douglas County, Neb., sitting as a Board of Equalization." It is signed, "City of Omaha, by W. C. Lambert, First Asst. City Attorney." The protest complains that on February 23, 1912, "said city became the owner of all property, property rights, franchises, and rights, and other interests, both real, personal and mixed, of the Omaha Water Company, in every way connected with or appurtenant to its water-plant in this city, and has ever since such time been the owner of all of said property." It is then al-

leged "that all and all parts of said property have been assessed by the county assessor of Douglas county and valued for assessment purposes for both said county and the city," and that the valuation "for said purposes has been placed at $5,334,500." It is then charged that at the time of said assessment, and ever since, "all of said property was exempt from assessment, valuation for assessment purposes, and taxation, under section 13, ch. 77, art. 1, Comp. St. Neb. 1911, and should not be valued and assessed for any purposes." It is then alleged that, if the petitioner is right as to its contention and view of the law, the effect "would be to require the carrying of said sum of $5,334,500 against which no assessment could validly be made, and would result in materially decreasing the amount of revenue which might be desired by both the county of Douglas and the city of Omaha;" also that the larger evils which might attend said course, in addition to the evils stated, "would be expensive litigation and troublesome delays in relieving against taxes assessed against said property." The prayer attached is: "That your honorable body determine and adjudge said property and all parts thereof heretofore belonging to said Omaha Water Company and passing from it by purchase to the city of Omaha, and now assessed as aforesaid, to be exempt from valuation, assessment, and taxation since February 23, 1912, because of the ownership thereof by the city of Omaha; and that you cause to be entered the proper order and to be made the proper records exempting said properties from taxation and cause the same to be stricken and removed from the assessment and taxing records and rolls of the county of Douglas."

The transcript shows that the board reconvened July 1, 1912, Chairman Best presiding; that there were present Dewey, Elsasser, Hart, Lynch, O'Connor, Shriver, and Mr. Chairman. On motion the assessment made by the county assessor "upon the personal property of the Omaha Water Company in the amount of $5,334,500" was reduced to "no dollars" by unanimous vote. On July 2, 1912, the board met again, all the members being present, and the

prior action of July 1, 1912, reducing the valuation of the personal property of the Omaha Water Company in Douglas county from $5,334,500 to "no dollars" was reconsidered by a vote of six yeas and one nay. Thereupon the original motion was withdrawn, and Peter E. Elsasser made a motion as follows: "I move that the real estate formerly owned by the Omaha Water Company and now owned by the city of Omaha, and situate within the city of Omaha, returned for taxation at a value of $259,300 be stricken from the tax rolls, and declared exempt from taxation. I move further that the real estate formerly owned by the Omaha Water Company and now owned by the city of Omaha, situate in the city of Florence, remain assessed and valued for taxation at $556,300, and that the real estate formerly owned by the Omaha Water Company now owned by the city of Omaha, situate in the precinct of Benson, remain assessed and valued at $25,000, all as returned by the county assessor for the year, 1912." Said motion was adopted by unanimous vote. It was therefore further moved by Peter E. Elsasser: "Whereas as the county assessor has made a return of $5,334,500 covering all the personal property of the Omaha Water Company in Douglas county, of which said amount $3,964,200 is within the limits of the city of Omaha; $723,950 within the limits of the city of Florence; $609,500 is within the limits of the city of South Omaha; $18,925 is within East Omaha, and $18,925 within the village of Dundee, all now owned by the city of Omaha, I, therefore, move that the personal property aforesaid within the city of Omaha be stricken from the assessment rolls, and declared exempt from taxation, valued at $3,964,200, and that the personal property aforesaid within the city of Florence valued at $723,950, within South Omaha valued at $609,500, within East Omaha $18,925, and within Dundee $18,925, be and the same is hereby valued and assessed for taxation at the figures above stated, respectively." This motion was adopted by a unanimous vote. Thereupon an appeal bond was executed and approved reciting the purpose of an appeal to the district court for Douglas county and notice

was given of the proposed appeal. The transcript of the proceedings for the year 1913 is very like the foregoing proceedings for the year 1912. There was an order made by the district court in each of the cases consolidating them, and they were heard and disposed of together upon the pleadings, a transcript of the record of the board of equalization of Douglas county, and the evidence, and also the arguments of counsel. The district court found that the property assessed and described in each of the cases was at the time of the assessment and levy the property of the city of Omaha; that the property described in the pleadings in each of said cases, being the property of the municipality of Omaha, was at the time of such assessment and levy exempt from taxation. The county of Douglas, School District No. 5 in Douglas county, and the city of Florence severally excepted to each and every of said findings. It was thereupon ordered and adjudged by said court: "That the assessment and levy by the assessor and board of equalization of the county of Douglas of and on the property described in the pleadings in each of the above entitled cases was null and void, and of no effect, and that the said levy and assessment is hereby set aside and canceled, and that the county treasurer of Douglas county is hereby ordered and directed to cancel upon his books the assessment and levy on all the property described in the transcript of the board of equalization, being the pleadings in each of the cases hereinbefore mentioned, and that the county of Douglas pay the costs of the appeal in each of said cases from the board of equalization." The county of Douglas, School District No. 5, and the city of Florence severally excepted, and each filed a motion for a new trial, and appealed from the judgment and order made.

It will be seen that the question presented is whether property which is municipally owned should be exempt from taxation. Section 2, art. IX of the constitution, in part reads: "The property of the state, counties, and municipal corporations, both real and personal, shall be exempt from taxation, and such other property as may be

used exclusively for agricultural and horticultural socie-
ties, for school, religious, cemetery, and charitable pur-
poses, may be exempted from taxation, but such exemption
shall be only by general law." Section 4402, Rev. St. 1913,
provides in part: "Lands, houses, moneys, debts due the
city, and property and assets of every description belong-
ing to any city governed by this chapter, shall be exempt
from taxation." Section 6301, Rev. St. 1913, in part pro-
vides: "The following property shall be exempt from
taxes: First. All property of the state, counties and mu-
nicipal corporations." The foregoing provisions were in
force in the state before the property in question was
sought to be assessed.

It is contended by the appellants that the case must turn
on the construction of the clause in the constitution con-
cerning exemption; that at common law property of a
state, county or city, used for public purposes, was ex-
empt from taxation, and that the part of our constitution
above quoted was merely declaratory of the common law.
In the same connection it is said that the language of the
constitution involved in this case should be construed ac-
cording to the intention of its framers, and the people of
the state of Nebraska, taking into consideration the con-
ditions as they existed at the time of the adoption of such
constitution; that to construe the constitution in any other
way would do violence to the intention of its framers and
to the people of the state, and produce results not con-
templated or desired. To this, we think, it may be said
that the policy of the law at the time the constitutional
provision was adopted is the policy of the law at the pres-
ent time. If at the common law property used for public
purposes was exempt from taxation, and the constitution is
declaratory of that principle, then the principle has existed
in any event ever since the constitution was adopted.

The case of *Henry v. City of Lincoln*, 93 Neb. 331, is
cited as authority for the statement that a municipality
engaged in the furnishing of water is engaged in a purely
business or commercial enterprise. In the *Henry* case
the question is not a question of taxation. In that case the

question was whether it was necessary to file a claim for damages within the time specified by the statute. There was no question touching the levy of an assessment or the collection of taxes.

The brief of appellants contains a long argument calculated to show that under the present system the city of Omaha can keep up the interest, pay off the debt, and soon have a net profit amounting to a large sum of money. That is not the question. Whether Omaha can make money by selling water does not reach the constitutional provision, neither does it reach the statute. If it shall be found by the legislature, or by any competent authority created by the legislature, that the rates charged by the city of Omaha are too high, then such charges are to be regulated in a constitutional and legal way. The statute seems to be as broad as the constitution, and both constitution and the statute would seem to be plain enough, so that there should be no great doubt as to what was the purpose intended. The framers of the constitutional provision must have intended to exempt all classes of municipally owned property. That would seem to be the only fair interpretation which can be placed upon the language used in the constitution and the statute. We do not feel at liberty to disregard the provision of the constitution prepared by its framers, and adopted by the people when the instrument was voted upon and became the fundamental law of the state. Neither can we ignore the legislative expression of the will of the people through their representatives, and the expressions used in the statute concerning the same matter mentioned in the constitution emphasize the constitution. These provisions support each other. There should be no payment of taxes by the public upon that which the people own through their municipalities.

The city of Omaha was required to purchase the entire property from the Omaha Water Company, which had been serving the community of which Omaha is a part, and whether lying within the limits of Omaha or in any part outside of such limits. *City of Omaha v. Omaha Water*

*Co.,* 218 U. S. 180. The city of Omaha was the undisputed owner of the property of said water plant; a part thereof being located in the city of Florence; a part in School District No. 5, Douglas county; a part in East Omaha; a part in the precinct of Benson; a part in the village of Dundee; a part in the city of South Omaha; a part in school district of South Omaha, and the remainder in the city of Omaha. The particular assessments in question here are a part of the assessments affected by this litigation. The board of equalization exempted that part of said property within the city limits of Omaha, but burdened the remainder of it with taxation. The water-works property was taken over by the city as a unit, and it is being operated as such in the service of the city. All the property involved in the assessments is property used in connection with the city's plant. The trial court found that the property so assessed was the property of the city of Omaha, and that the city of Omaha was a municipal corporation existing under the laws of this state. There is no controversy over the fact of ownership of this property by the city of Omaha, nor is there any question of its right to own such property, nor is there any challenge of its power to own and operate the plant in question. Under the constitution of this state rightful ownership of property by a municipal corporation such as the city of Omaha is all that is required or necessary to extend to such property complete exemption and immunity from assessment and taxation, whether located within the city or without. Section 2, art. IX of the constitution; Rev. St. 1913, secs. 4402, 6301; *Herman v. City of Omaha,* 75 Neb. 489; *People v. Assessors of City of Brooklyn,* 111 N. Y. 505, 2 L. R. A. 148; *Walden v. Town of Whigham,* 120 Ga. 646; *Smith v. Nashville,* 88 Tenn. 464, 12 S. W. 924, 7 L. R. A. 469; *Ryan v. City of Louisville,* 133 Ky. 714, 118 S. W. 992.

In *People v. City of Brooklyn, supra,* the court held, as declared in the syllabus: "It seems that the principle that municipal property devoted to public uses is not taxable, unless expressly made so by statute, does not depend upon the origin of the title, whether acquired by purchase or

voluntary grant, or as the product of taxation, nor upon the locality of the property, whether situate within or without the territorial limits of the municipality." The landing place of Fulton Ferry in the city of Brooklyn was the place under consideration. It had been occupied and used as an incident to the ferry franchise for 250 years by the city of New York. It was held that it was not taxable in Brooklyn. The fourth syllabus in that case reads: "That the city of New York operates the ferry through lessees, and derives its revenue from the rental, and not from the operation of the ferry by its immediate agents and servants, does not make the franchise or the landing taxable." In the body of the opinion it is said: "We think the landing place was not taxable, upon the principle that property of a municipality acquired and held for governmental and public uses, and used for public purposes, is not a taxable subject, within the purview of tax laws, unless specially included.  *  *  *  There would be manifest incongruity in subjecting to taxation for public purposes property dedicated to, or acquired under legislative authority for public and governmental use."

In *Smith v. Nashville, supra,* it is said in the syllabus: "The fact that the city charged residents within its corporate limits for water furnished them, and thereby realized a considerable revenue, in excess of the expenses of operating the water-works, which surplus was applied to city purposes, does not defeat the implied exemption of the water-works from taxation." In the same case it was said that a city did not render itself liable for the payment of a privilege tax "by reason of the fact that it furnished water to persons outside its own corporate limits, for compensation, who are not shown to have been residents of any city, taxing district, or town falling within the provisions of said act."

In *Ryan v. City of Louisville, supra,* it is said in the syllabus: "The water-works system owned and operated by a city for the benefit of its inhabitants is used for public or governmental purposes, and is exempt from taxation, under constitution, sec. 170, exempting from taxation pub-

lic property used for public purposes." In the same case it was held that, where an assessment for taxation would create an apparent lien on the water-works of a city, the cloud of the title might be removed by an action in equity "because the property is exempted from taxation."

In *Herman v. City of Omaha, supra,* in the body of the opinion, quoting from *Trustees of Public Schools v. City of Trenton,* 30 N. J. Eq. 667: "The immunity of the property of the state, and of its political subdivisions from taxation does not result from a want of power in the legislature to subject such property to taxation. The state may, if it sees fit, subject its property, and the property owned by its municipal divisions, to taxation, in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the state or its municipalities."

We conclude from an extended examination of authorities that the property is not taxable. The judgment of the district court is correct, and it is

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.

ROSE, J., not sitting.