STATE EX REL. MARTIN FEIST v. JESSE FOOT AS CITY COMPTROLLER OF CITY OF ST. PAUL.[1]

January 13, 1922.

No. 22,458.

City of St. Paul—moneys of water board public funds.

1. The funds of the board of water commissioners of the city of St. Paul are public funds in the sense that courts will prevent their appropriation for other than the legitimate purposes for which they were intended.

Payment to servant of water board illegal.

2. Such board is not authorized to reimburse an employe who was

[1]Reported in 186 N. W. 230.

compelled to pay damages to persons injured through his negligence, such negligence not occurring while he was engaged in actual work for the board or in protecting its property or rights.

Upon the relation of Martin Feist the district court for Ramsey county issued its alternative writ of mandamus directed to Jesse Foot, as comptroller of the city of St. Paul, commanding him to audit and allow a certain voucher of the board of water commissioners. Defendant's demurrer to the petition and writ were sustained, Michael, J. From the order sustaining the demurrer of defendant and quashing the alternative writ, relator appealed. Affirmed.

*John A. Burns,* for appellant.

*Arthur E. Nelson* and *C. F. McNally,* for respondent.

HOLT, J.

Mandamus to the city comptroller of St. Paul to audit a voucher, issued by the board of water commissioners, was denied and relator appealed.

The relator, Martin Feist, has for nearly 37 years been employed in the water department of the city of St. Paul. In May, 1918, he was superintendent of "mechanical equipment" therein, and was furnished with an automobile for use in the performance of his duties. He was directed by his superior to drive from his usual place of employment, McCarron Lake pumping station, to some other part of the city where his services were needed, and in turning into Rice street from the station he collided with another automobile, injuring its occupants. The latter sued relator and recovered damages which he paid. On the recommendation of the superintendent, the board of water commissioners determined to reimburse relator and issued the voucher in his favor for the amount so paid by him. In the usual course this voucher was presented to the respondent for audit. This he refused to do upon the advice of the city's legal department. This proceeding followed.

The board of water commissioners, whilst constituting a department of the city, has a separate corporate existence with full power to contract, and may sue and be sued under its own name. In the

conduct of the water system it has full power and discretion to act without any interference from respondent or the city council. And relator claims that, in this matter of reimbursing him, the board was functioning within its exclusive domain. On the other hand, respondent contends that the board has no authority or power to appropriate any of the funds in its control for private purposes, and that such must be held reimbursing relator for the loss he met through his own negligence.

The funds within the control of the board are not derived from direct taxation, but from water rents, except as the cost of laying water mains is assessed as benefits against abutting property. But that notwithstanding, we must consider the moneys within the board's control as public moneys in the sense that the same can only be used for legitimate ends in carrying on the business for which the board is organized. The board exists solely to furnish the city and its inhabitants with a public utility. It is not for private gain. Insofar as water is furnished for fire protection, sprinkling, street cleaning, public baths and public drinking fountains, the payment to the board is made out of the city's funds. The city council fixes the rates which the board may collect. It is plain that the funds in the hands of the board are, at least, trust funds in which the city and its inhabitants are interested and therefore may be called public funds, misappropriation of which courts will prevent. The charter provision applicable to the board indicates that it has not free hand in its treasury, a part of section 458 reads: "All money collected or expended by the said board shall be kept in a separate fund, which may be divided into such accounts as desirable and shall be used only for the purposes and uses of said board and not otherwise." West Chicago Park Commrs. v. Kincade, 64 Ill. App. 113.

It is held that a municipal corporation may reimburse an officer where, in the performance of his duty, he erred to the injury of one who, on that account, recovered damages from him. City of Moorhead v. Murphy, 94 Minn. 123, 102 N. W. 219, 68 L. R. A., and cases therein cited. But such reimbursement may not be made in every case of loss to an officer or agent of a municipality. Halstead v. Mayor of New York, 3 N. Y. 430; Merrill v. Plainfield, 45 N. H. 126.

In Hotchkiss v. Plunkett, 60 Conn. 230, 234, 22 Atl. 535, the court said, in order to justify the expenditure for such purpose, three things must appear: "First, the officer must have been acting in a matter in which the corporation had an interest. Second, he must have been acting in the discharge of a duty imposed or authorized by law. And third, he must have acted in good faith."

And in State v. St. Louis, 174 Mo. 125, 133, 73 S. W. 623, 61 L. R. A. 593, the court states: "The true test in all such cases is, did the act done by the officer relate directly to a matter in which the city had an interest, or affect municipal rights or property, or the rights or property of the citizens which the officer was charged with a duty to protect or defend?"

We apprehend that an agent or servant of a municipality is as much entitled to favorable consideration as its officers in a case of reimbursement, although perhaps he may not be so often placed in a position where he is required to act in a matter in which the corporation has an interest, or where the law demands action, as is the case with an officer. Bancroft v. Inhabitants of Lynnfield, 18 Pick. (Mass.) 566, 29 Am. Dec. 623, states that towns have authority to reimburse their agents who may incur a liability by an inadvertent error. "When the servants of the town have made mistakes, which have rendered them liable at law, it has been held legal and proper for the town to meet the expense." Babbitt v. Savoy, 3 Cush. (Mass.) 530, 533.

Recurring to the test above referred to, it appears to us that the act which caused the loss in the instant case did not relate directly to a matter in which the board or the city had an interest, or to any rights or property of either, or of the inhabitants of the city, or of the patrons of the board. It is true he was driving an automobile furnished by the board, and he was on his way to the place where he had a duty to perform, but, nevertheless, in passing over the streets of the city he was on a par with every other traveler thereon and was not then engaged in any act directly involving the board or its patrons or their rights. His driving was not the driving of a fire apparatus in response to a fire alarm, or of a police patrol vehicle on duty. He was not in the act of protecting the board's

right to the automobile, properly speaking, for the reimbursement sought is for damage caused to other parties as to whom he had no duty to perform as a servant of the board. Nor while in the automobile was he bent upon any work of the water department which required the exercise of his judgment and discretion, such as installing or repairing water pipes or collecting water rates. Assuming that the jury properly found him negligent, he alone should bear the consequence. Had the recovery been against the board there would have been a right of recovery over against relator.

It is forcibly argued that the board has an undoubted right to appropriate money for insurance protecting against loss from the negligence of its officers and servants, and, that being so, it may in its judgment and discretion dispense with such insurance and reimburse its agents and servants as a business proposition. It is said this may be not only more economical, but tend to secure better servants, since responsible ones might hesitate to assume the risk of the employment if ultimately liable for every act which a jury might regard as negligent. However, an extension of the rule, authorizing a discretion in the use of public funds to reimburse for losses sustained by a municipal officer or servant because of his negligence, seems to us to establish a dangerous precedent, and would have a tendency to make such officers and servants less careful in the discharge of their duties than when restrained by a feeling of responsibility. Especially is this danger near at hand in these days when so many municipal employes and officers are furnished with automobiles by the municipality. Formerly the risk of incurring liability to a municipality on account of the negligent use of its streets by its officers or servants was very remote. The mayor, as well as the subordinate employes, if they had occasion to travel on the streets of the city, kept a horse, and if any negligence occurred in its management to the injury of another there was no thought of saddling the loss upon the city. It is different now. We think that the rule should be strictly adhered to that reimbursement to an officer or servant can only be made when the act which caused the damage was one directly related to a matter in which the corporation was

interested or was one in the actual discharge of his duty. This was not such a case.

The order sustaining the demurrer to the petition and alternative writ of mandamus is affirmed.