COUNTY OF ANOKA v. CITY OF ST. PAUL AND ANOTHER.[1]

June 7, 1935.

Nos. 30,198, 30,211.

[1]Reported in 261 N. W. 588.

*Oscar Hallam* and *Leeds H. Cutter*, for County of Anoka.

*John L. Connolly* and *Louis P. Sheahan*, for City of St. Paul and Board of Water Commissioners of City of St. Paul.

DEVANEY, CHIEF JUSTICE.

This is a proceeding to enforce payment of delinquent taxes for the year 1926. The city of St. Paul, Minnesota (hereinafter called the city), is located entirely in Ramsey county. Many years prior to 1926 the city purchased some 1,525.61 acres of land situated in Anoka county, Minnesota. On this land the city built and constructed a municipal waterworks for the purpose of supplying water to its inhabitants and for building and maintaining sewers, extinguishing fires, cleaning and sprinkling streets, etc. The city also supplied water from this municipal waterworks to the cities of West St. Paul and South St. Paul, Minnesota. Both of these cities were and are separate municipalities not included within the limits of St. Paul.

The land in question contained several lakes and artesian wells and was used largely as a catchment basin. In the year 1926 approximately 1,488.32 acres thereof were used for impounding waters, 12.67 acres for station grounds, and 24.62 acres for conduits and canals. In 1926, 352.99 acres were, and for many years prior thereto had been, leased by the city to various private parties who used such for agricultural purposes. On this leased portion of the land the city had paid taxes regularly until the year 1926.

Prior to December 1, 1924, the city erected at Fridley, Minnesota, another waterworks. This second plant is entirely apart from the one aforementioned. By means of this second plant the city thereafter derived its water supply from the Mississippi river. Consequently the original plant has not been actively operated since some time prior to 1926, though it is still maintained and has never been abandoned. The finding is to the effect that this is now a reserve plant held in readiness but not used.

Art. 9, § 1, of the Minnesota constitution exempts from taxation "public property used exclusively for any public purpose." 1 Mason Minn. St. 1927, § 1975(7), enacted pursuant to this constitutional provision, exempts from taxation "all public property exclusively used for any public purpose." Under these provisions the city contends that the entire 1,525.61 acres of property situated in Anoka county are exempt from taxation. The county of Anoka contends that none of such property is exempt. The court found that the 352.99 acres of land owned by the city but leased to private parties for agricultural purposes were not exempt from taxation; that the remaining 1,172.62 acres were public property used exclusively for a public purpose and so were exempt from taxation; and that the sale of water from the waterworks on this land to the cities of South St. Paul and West St. Paul was quite incidental to the operation of the entire municipal waterworks and of no controlling importance to a determination of the issue in the case. The county of Anoka appealed from the entire judgment entered pursuant to these findings, and the city appealed from that part of the judgment providing for enforcement and collection of taxes against the 352.99 acres of the land owned by the city but leased to private parties.

Four questions are presented:

(1) Did the court err in concluding that the 352.99 acres owned by the city and leased to private parties for agricultural purposes were not exempt from taxation?

(2) Did the court err in holding that the remaining 1,172.62 acres owned by the city and used as a part of the waterworks were exempt from taxation?

(3) Is it material to a decision of these issues that the city sold water from this municipal waterworks to the cities of South St. Paul, West St. Paul, and other consumers outside the city and derived a revenue therefrom?

(4) Is the decision of these questions in any way affected by the fact that the waterworks located on the land in question was not in active operation in 1926 and has not been in active operation since that time?.

■ We think the court was correct in its holding that the 352.99 acres of land owned by the city but leased to private parties for agricultural purposes were subject to taxation. The entire 1,525.61 acres of property here involved is "public property." That fact does not admit of doubt. Any property owned by the state or by any of its subdivisions, such as counties, municipalities, etc., is "public property" within art. 9, § 1, of the Minnesota constitution. The fact that property may be "public property" even though not owned by the state or one of its subdivisions (see State ex rel. Realty Co. v. Cooley, 62 Minn. 183, 186, 64 N. W. 379, 29 L. R. A. 777; State v. Browning, 192 Minn. 25, 28, 255 N. W. 254) is of no concern here. Whatever else may be "public property" within art. 9, § 1, of the Minnesota constitution, no one questions but that the property here involved which is owned by the city of St. Paul is "public property."

But the constitution exempts from taxation "public property" only when "used exclusively for any public purpose." Consequently, the determinative consideration here is the use to which the city put this acreage which it owns in Anoka county. If the city used and is using this land for a nonpublic purpose then the land is not tax-exempt. If, on the other hand, the city is using this land in its capacity as an agency of government for a public purpose, then it is tax-exempt. It cannot be said that the city is acting in its governmental capacity when it purchases land and leases the same to private parties for a stipulated rental. Though the city has an undisputed right to do this, in so doing it acts in its proprietary capacity. The city was not incorporated for the purpose

of engaging in the business of leasing farm land. This activity is completely divorced from any governmental activity. Consequently, when the city bought 352.99 acres of land in Anoka county and leased the same to private parties, it was not using the land for a "public purpose" within art. 9, § 1, of the constitution. It is no answer to the conclusion here reached to point out that the revenue derived from the rental·of this land accrued to the city and was used by it to help defray the cost of operating the waterworks. The actual use to which these acres of land were devoted was not a public or governmental one. · Consequently, it is immaterial what the city did with, or how it used, the rent money. Of note here are the cases of State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; State v. St. Barnabas Hospital, 95 Minn. 489, 104 N. W. 551; State v. Carleton College, 154 Minn. 280, 191 N. W. 400, wherein it was held that real property owned by an institution entitled to exemption was subject to taxation even though the income derived from such property went into the fund to support the tax-exempt institution.

What the result might have been in this case had the city shown a necessity for owning and controlling these leased acres in order to maintain a suitable catchment basin we do not decide. There is nothing in the record indicating that it was necessary for the city to own and control the flow of water upon these lands in order to maintain a suitable catchment basin. The burden of establishing such fact as might have entitled the city to an exemption on this portion of the land rested on the city. It did not meet this burden.

■ In our opinion the court properly held that the remaining 1,172.62 acres of Anoka county property were exempt from taxation. It is contended first that this land owned by the city and located in Anoka county is not "used exclusively for any public purpose" but is used by the city in its proprietary capacity and not for a public use. We cannot follow this reasoning. The city of St. Paul was authorized by acts of the state legislature to establish and maintain a municipal waterworks. Sp. L. 1881, c. 188; Sp. L. 1883, c. 75; Sp. L. 1885, c. 110; Sp. L. 1889, c. 123; Sp. L. 1891, c. 9. By virtue

of these and other acts the city was authorized to establish a suitable waterworks in a proper location. We have no difficulty in holding that the city is and was engaged in a municipal or governmental undertaking in so doing. In our opinion the city is engaged in its governmental capacity when it manages or operates any public utility such as a waterworks, an electric power plant, a sewage disposal plant, etc., where the entire citizenry benefits thereby and the health and welfare of the community make such action expedient or necessary. In a previous decision this court has referred to the board of water commissioners of St. Paul, the board engaged in managing the waterworks involved in the case at bar. State ex rel. Feist v. Foot, 151 Minn. 130, 132, 186 N. W. 230. The court said:

"We must consider the moneys within the board's control as public moneys. * * * *The board exists solely to furnish the city and its inhabitants with a public utility. It is not for private gain.*"

No intelligent person would question the fact that the inhabitants of a city as large as St. Paul must be continuously supplied with pure water. The city, when it undertakes to do this, acts in its governmental capacity, not in its proprietary capacity. Hence it follows that as much of the land in question as is necessary for the maintenance and operation of the waterworks is property used for a "public purpose" and so is tax-exempt. It appears in the record that 1,172.62 acres of the land owned by the city are directly used in the maintenance and operation of the waterworks; hence that acreage is exempt.

It is true that the funds used to operate the waterworks are not raised by general taxation, but come from water rents or charges made by the board against the individual consumer. This factor does not affect the status of the waterworks. It is none the less a public enterprise. It still subserves a public purpose. It is immaterial that operation of the waterworks might in any one year yield a profit. The board of water commissioners is not organized to make a profit. As a matter of fact the record shows that the board did not make a profit but incurred a deficit for the time here involved. This, however, is not a controlling feature nor even an important consideration to this decision.

The authorities appear to be divided on the question of whether or not a municipal waterworks, electric power plant, or similar enterprise and the realty on which the same is located is exempt from taxation. We believe the better reasoned decisions under constitutional provisions similar in purport to ours have held such property exempt. Town of Canaan v. Enfield Village Fire Dist. 74 N. H. 517, 70 A. 250; Town of Hamden v. City of New Haven, 91 Conn. 589, 101 A. 11, 3 A. L. R. 1435; City of Eugene v. Keeney, 134 Or. 393, 293 P. 924; Traverse City v. Blair Twp. 190 Mich. 313, 157 N. W. 81, Ann. Cas. 1918E, 81; City of Omaha v. Douglas County, 96 Neb. 865, 148 N. W. 938. We follow these, and others which could be cited, in holding that this property is used for a public purpose and so is exempt from taxation. Of special interest here is the case of Minneapolis Mill Co. v. St. Paul Water Works, 56 Minn. 485, 58 N. W. 33, 34. The litigation in that case involved the identical Anoka county waterworks here considered. The issue in that case was entirely foreign to the one here, but it is interesting to note the language there used by the court in referring to the use of water by this municipal waterworks as a "public use." The suit was one to enjoin the operation of this municipal waterworks. It was brought by a lower riparian owner who claimed the city unlawfully decreased the supply of water in the stream. The court said [56 Minn. 489]:

"The plaintiffs are riparian owners on a navigable or public stream, and their rights as such owners are subordinate to *public uses* of the water in the stream. And their rights under their charters are, equally with their rights as riparian owners, subordinate to these *public uses*. There can be no doubt but that the public, through their representatives, have the right to apply these waters to such *public uses* without providing for or making compensation to riparian owners. The navigation of the stream is not the only *public use* to which these *public waters* may be thus applied. The right to draw from them a supply of water for the ordinary use of cities in their vicinity is such a *public use*, and has always been so recognized."

We are not unmindful here of Keever v. City of Mankato, 113 Minn. 55, 129 N. W. 158, 775, 33 L.R.A.(N.S.) 339, Ann. Cas. 1912A, 216. This was a suit against a city for negligent operation of its waterworks. We believe the principles there laid down have no application to this suit, which is not remotely related to any question of negligence but is concerned with the question of the character of the use of the land.

It is contended further that the property here involved, even though it might be exempt if located within the limits of the city of St. Paul, cannot be exempt when lying outside the city limits. With this we do not agree. Our position is well stated by the Michigan court in the case of Traverse City v. Blair Twp. 190 Mich. 313, 314, 157 N. W. 81, Ann. Cas. 1918E, 81, where that court disposed of the same contention by saying:

"Plaintiff, an incorporated city, brought this action to recover the amount of taxes, paid by it under protest, which had been assessed for the year 1913 against its electric light and power plant located within the territorial confines of defendant township. * * *

"The exempting language of the general statutory provision is plain, without distinction as to location, and we find no rule of construction authorizing the court to read into the act any exceptions based on territorial boundaries. As it reads it clearly applies to such public property used for public purposes wheresoever located. In the absence of some plain and direct exception, other courts, when called upon to consider the question, have as a rule denied their authority to restrict the legislation by adding such a test. In the following cases exemptions of like import with the one under consideration have been construed as unaffected by territorial limitations, and it is held that property of one municipality located within the boundaries of another is included within the exemption: Town of West Hartford v. Water Commissioners, 44 Conn. 360; City of Somerville v. City of Waltham, 170 Mass. 160, 48 N. E. 1092; Reading v. Berks County, 22 Pa. Super. Ct. 373; State v. Township of Verona, 59 N. J. L. 94, 34 A. 1060; Wayland v. Middlesex County, 4 Gray (70 Mass.) 500; People ex rel. Mayor, etc. of City of New

York v. Board of Assessors, 111 N. Y. 502, 19 N. E. 90, 2 L. R. A. 148; State v. Conover, 63 N. J. L. 191, 42 A. 838; City of Rochester v. Town of Rush, 80 N. Y. 302; City of Perth Amboy v. Barker, 74 N. J. L. 127, 65 A. 201; City of Toledo v. Hosler, 54 Ohio St. 418, 43 N. E. 583; In re Town of Orillia, 7 Ont. L. Rep. 389."

Other cases holding that land owned by a municipality is none the less entitled to exemption because located outside the limits of that municipality may be found in those cited above. We are following the great weight of authority in holding that where public property is used exclusively for a public purpose it is exempt even though situated outside the limits of the governmental agency which owns it.

■ The court was correct in its holding that the sale of water by the city to the cities of West St. Paul, South St. Paul, and other consumers outside the city was quite incidental to the operation of the waterworks and of no controlling importance to a determination of the issues of the case. Strictly speaking, the city was not engaged in a governmental or municipal activity in producing and selling water to other cities. To this extent it was carrying on a private business. But the record shows that the board of water commissioners derived only a little more than one-tenth of their entire revenue from the sale of water to consumers outside the city. It is very likely that the percentage of revenue thus derived as compared to the entire yearly revenue varies somewhat from year to year. There is no feasible or reasonably practical way in which the land can be taxed only to this extent. The important thing is that nearly nine-tenths of the water produced was used by the city itself and by its inhabitants. That the whole plant should be taxed because a small portion of the water was sold to outsiders does not appear reasonable.

It is argued that since the city was in part at least engaging in a private business the land upon which this waterworks was located was not used "exclusively" for a public purpose and hence the entire waterworks should be taxed. We do not agree. The word "exclusively" as here used means "substantially all" or "for the greater part." This word must be given a practical construction. Par-

ticularly in point here is the language of State ex rel. Realty Co. v. Cooley, 62 Minn. 183, 186, 64 N. W. 379, 29 L. R. A. 777:

"The trial court seems to have taken the position that, in order to have the benefit of the exemption clause, the property must be owned by the public; and, further, that it must be exclusively used for a public purpose. We think this interpretation altogether too literal and radical, for, if this construction must prevail, not only must the ownership be in the public, but the property itself must be actually and exclusively used for some public purpose. Under this view, this immunity from taxation would be taken away from all property having public ownership *while it was unused,* or *while any part of it was used for private purposes under the supervision of the public authorities and by their consent.*"

In this connection see also Jersey City Water Commrs. v. Gaffney, 34 N. J. L. 131.

The fact that the waterworks here under consideration has not been actively used since 1926 and is now held as a reserve plant does not affect the decision herein. Most cities the size of St. Paul have more than one waterworks plant, at least one of which is kept in reserve. This plant has never been abandoned. Until abandoned or sold to a private party or put to a different use, it is still public property used for a public purpose and is exempt from taxation even though not presently used and operated.

Affirmed.