## TERRITORY v. C. B. MACHADO.

### No. 1820.

ARGUED MAY 31, 1928.  DECIDED JUNE 8, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

The defendant was indicted and convicted for having committed an assault and battery upon one Felipe Drapesa, sometimes known as Felipe Molina, with a weapon obviously and imminently dangerous to life, to-wit, a revolver loaded with gunpowder and bullets. He was sentenced to pay a fine of $500 and costs of court and brings the case here on a bill of exceptions.

The evidence shows that a complaint had been sworn to by one Bill John before the district magistrate of Makawao, on the Island of Maui, charging Felipe Molina, the person upon whom the assault and battery is alleged to have been committed, with having been present on the 12th day of May, 1927, at a place where a gambling game was being carried on and at which money was won or lost. Upon this complaint the district magistrate issued a warrant for the arrest of Felipe Molina and placed it in the hands of the defendant, Machado, who was a duly appointed and authorized police officer, for execution. On the day the warrant was issued and placed in Machado's hands he went to the laborers' camp at Keahua, where Felipe lived, for the purpose of arresting him. The defendant testified in substance that when he informed Felipe what he was there for and undertook to arrest him Felipe made such effective resistance with an automobile jack and a knife that he (Machado) was obliged to abandon his purpose and returned home; that upon reaching home he telephoned a deputy sheriff, named Silva, to whom he explained that Felipe refused to come with him and had drawn a knife on him; that Silva told him to go back and get his man; that he then armed himself with a gun and a pair of handcuffs and returned to the camp, where he again found Felipe who was still in a belligerent mood and refused to submit to arrest; that Felipe was armed with a knife and when he (Machado)

told him to put the knife down and come with him Felipe refused and that he then approached Felipe for the purpose of handcuffing him and when Felipe came at him with the knife raised in his hand he shot him in the leg; that Felipe continued to advance upon him, whereupon he fired a second shot which took effect in Felipe's arm; that Felipe then cut him (Machado) on the arm, severing two or three blood vessels, whereupon he fired a third shot, which brought Felipe to the ground; that after Felipe fell to the ground he (Machado) kicked the knife with which Felipe had attacked him away from Felipe and in doing so, because of the proximity of the knife to Felipe's face, he kicked Felipe in the face. Felipe testified in substance that when Machado first came to the camp he knew Machado was a police officer and he also knew that Machado placed him under arrest. He also testified that he refused to go with Machado. He also testified that Machado arrested him because he had not paid the five dollars bail money which he was required to put up on the gambling charge, and that he refused to go with Machado because he expected to pay the five dollars on the next pay day and that he so stated to Machado. He denied having or threatening to use any weapon on this occasion. Referring to Machado's second visit, he testified in substance that when he saw Machado he (Machado) had a revolver in his right hand and a pair of handcuffs in his left hand and that Machado said to him, "Will you go with me?" and that he replied, "No;" that at that time he (Felipe) had no weapon; that Machado said to him, "If you don't follow me I will shoot you," and that he (Felipe) said, "I don't come even if you shoot me;" that he also said to Machado that he (Felipe) wanted to wait for the sheriff and at that time Machado shot him in the leg; that he (Felipe) then

went into a kitchen five or six feet away where he procured a knife in order to protect himself and returned to where Machado was; that Machado then shot him a second time, this shot taking effect in his left arm; that he then tried to reach Machado but could not and Machado fired the third shot, which took effect in the lower part of his abdomen and completely disabled him.

We have not attempted to make a detailed statement of the testimony of these two witnesses but have summarized its salient features only for the purpose of determining the correctness of certain instructions that were given at the request of the Territory, and to the giving of which the defendant excepted. Other witnesses testified, some in behalf of the Territory and others in behalf of the defendant, but since it is not our province to pass on the weight of the evidence it is unnecessary to recapitulate their testimony. If the jury believed the defendant and the witnesses who corroborated him a verdict of acquittal on the ground of self-defense would have been entirely justified. A public officer, charged with the duty of making an arrest, even for a misdemeanor, and who while in the performance of his duty is attacked with a dangerous weapon by the person whom he is attempting to arrest and whose life or personal safety is thereby imperiled, has an equal right to defend himself that a private individual has, even to the extent of shedding blood or, if necessary, to the extent of taking life. Is not a public officer, however, who is charged with the duty of making an arrest, even for a misdemeanor, authorized by law to use whatever measure and character of force that is reasonably necessary to effect the arrest, even though he is not at the time himself in serious peril?

In some jurisdictions it has been held that in case of a misdemeanor the arresting officer is not justified in

going to the extent of shedding the blood of the person whom he is attempting to arrest unless in doing so he acts in self-defense. We think by statute the rule here is otherwise. Section 3973, R. L. 1925, is as follows: "In all cases where the person arrested refuses to submit or attempts to escape, such degree of force may be used as is necessary to compel him to such submission." There is no ambiguity in this statute. Its meaning is perfectly plain. It is applicable alike to arrests for felonies and misdemeanors. It does not make the right of the arresting officer to use whatever degree of force is necessary to compel the submission of the person arrested dependent upon the existence of peril to himself. The necessity for the use of such force in order to compel the submission of the person arrested is all that is required in order to justify the officer in using the force. It does not exclude the right to shed blood if that degree of force is necessary to compel submission.

The prosecution's instruction No. 2 is not in conformity with this view of the law. The instruction is as follows: "You are instructed that under the law, except in self-defense, an officer has no right to proceed to the extremity of shedding blood in arresting or in preventing the escape of one whom he has arrested for a misdemeanor even though the offender can not be taken otherwise. In this case if an arrest was made or attempted such arrest was on a charge of a misdemeanor, and you are instructed that the defendant would not be justified in shooting the complaining witness unless such shooting was necessary to save his own life or to guard his person from great bodily harm." The effect of this instruction was to tell the jury that the only defense available to defendant under the law for shooting Felipe was the necessity of protecting himself from death or great bodily harm. This was error. The

jury might have believed from the evidence that there was no such necessity and yet might have believed that the shooting was necessary to bring Felipe to submission, in which event the defendant would have been entitled to an acquittal.

It is contended by the Territory that even if this instruction was erroneous it was cured by subsequent instructions containing a correct statement of the law. This contention is not sound. The instruction is complete within itself. It purports to state the entire law relating to the defendant's right to shoot Felipe. It is erroneous because it places too narrow a limitation upon this right. If other instructions were given correctly stating the law on this subject they were necessarily inconsistent with the instruction under consideration. In the face of this inconsistency the jury would not know which statement of the law to apply. The harm done by the erroneous instruction would not therefore be cured by the correct instructions.

The prosecution's instruction No. 3 should not under the circumstances of this case have been given in the form in which it was requested. The instruction is as follows: "The court instructs you that a police officer who is making a lawful arrest, or who has made a lawful arrest, is justified in using such force as is reasonably necessary to secure and detain the offender, overcome his resistance, prevent his escape, recapture him if he escapes, and to protect himself from bodily harm. It is not, however, every resistance that will justify an enormous battery. The force applied must have a due regard to the purpose it is to accomplish, that is, to overcome the resistance which is opposed to prevent the due exercise of the authority with which the officer is charged. If, however, such force is more than is reasonably necessary to secure and detain the offender or to

overcome his resistance, then it is no justification. If then you believe from the evidence that the defendant Machado was a police officer of the County of Maui, that as such officer he was attempting to make a legal arrest of Felipe Dropesa; and you further find that Felipe Dropesa resisted such arrest, I instruct you that as a police officer, the defendant was justified in using such force as was reasonably necessary to overcome such resistance and to protect himself from bodily harm. But if you find and believe from the evidence that Felipe Dropesa did not offer resistance to a legal arrest, or if you believe from the evidence that the defendant Machado used more force than was reasonably necessary to overcome the resistance offered, or the bodily injury threatened, by Felipe Dropesa, or if you find that after the resistance offered by Felipe Dropesa had been overcome, or the threatened bodily injury had been averted or prevented, that the defendant Machado continued to use force against the said Felipe Dropesa, then and in such case I instruct you that such assault was not justified in law."

In this instruction the court told the jury among other things that if it found that after the resistance offered by Felipe had been overcome (provided it found that he made resistance) the defendant continued to use force against Felipe, such assault was not justified by law. We do not say that this is an incorrect statement of the law but we think that without explanation it was calculated to mislead the jury to the defendant's prejudice.

It is conceded that there were only two forms of verdict submitted to the jury,—"guilty as charged" and "not guilty," and there was no other issue submitted to the jury.

The evidence shows that after the third shot was

fired and Felipe had fallen and was no longer capable of resistance, the defendant, in kicking the knife away from Felipe, kicked him in the face. The jury might have believed that the shooting of Felipe was justified but that kicking him in the face after he was down was not justified. Being, however, unskilled in the law and not knowing and not having been instructed that a verdict of guilty as charged would not be authorized by the kicking alone it is altogether conceivable that the jury was misled, by that portion of the instruction to which we have just referred, into believing that its verdict should be guilty as charged.

For the foregoing reasons the verdict is set aside and a new trial is granted.

*Wendell F. Crockett,* Deputy County Attorney of Maui (*E. R. Bevins,* County Attorney of Maui, and *A. E. Jenkins* with him on the brief), for the Territory.

*E. Vincent* (also on the briefs) for defendant.