# C. B. MACHADO *v.* EUGENE BAL, AUDITOR OF THE COUNTY OF MAUI.

## No. 1963.

SUBMITTED JULY 5, 1930.        DECIDED OCTOBER 2, 1930.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE DAVIS IN PLACE OF BANKS, J., ABSENT.

OPINION OF THE COURT BY PARSONS, J.

This case is before us upon submission on agreed facts brought within the provisions of section 2371, R. L. 1925. From the agreed statement the following facts among others appear: The plaintiff, C. B. Machado, is and was at all times mentioned in the statement, except during the period of suspension referred to therein, a duly commissioned and acting police officer of the County of Maui. Eugene Bal is the duly elected and qualified and acting auditor of the County of Maui. On May 18, 1927, a warrant for the ar-

rest of Felipe Drapesa issued out of the Makawao district court and was handed to Machado, as police officer, for service upon the accused. Machado thereupon, in performance of his duty as such police officer, in good faith, proceeded to Keahua in said county to arrest the accused. In attempting to arrest Drapesa Machado met with armed resistance and in encountering said resistance, in attempting to apprehend Drapesa, Machado shot and wounded Drapesa. The facts and circumstances of said arrest are fully set forth in the opinion of this court in *Territory* v. *Machado,* 30 Haw. 487, and as therein recited are made a part of the agreed statement of facts in this case. On October 26, 1927, the grand jury of the second circuit indicted Machado on a charge of having on the 18th day of May, 1927, committed an assault and battery with a weapon obviously and imminently dangerous to life on Felipe Drapesa and Machado was convicted on said charge in the second circuit court. On exceptions to this court the verdict of the jury was set aside and a new trial was granted. Thereafter a nolle prosequi was duly entered in the case in the second circuit court. Because of the indictment aforesaid Clement Crowell, sheriff of Maui, without first preferring charges against Machado and without notice to the latter and without a hearing, on November 1, 1927, suspended Machado as a police officer pending the disposition of the criminal charge above named, and on June 21, 1928, after the entry of the said nolle prosequi, the said sheriff reinstated Machado as a police officer. Machado's salary, to which he was entitled as police officer, was $35 per month, and the same has not been paid to him for the period covered by his suspension, during which time he was prevented from carrying on his official duties though ready and willing at all times to perform the same. On June 16, 1927, Felipe Drapesa began a civil action against Machado in the second circuit court for

damages in the sum of $5000 for injuries inflicted upon Drapesa by Machado at the time of said arrest. Machado filed an answer denying all the material allegations of Drapesa's complaint and on June 13, 1928, Drapesa discontinued said action. On or about July 10, 1928, Machado filed a claim against the County of Maui, for $1364, the same being for attorney's fees and expenses in the cases above mentioned and salary as police officer during the period of suspension, a copy of the claim being attached to the statement of agreed facts and made a part thereof. The board of supervisors of the County of Maui, duly assembled at their regular meeting on September 13, 1928, examined, allowed and ordered paid in full said claim provided the same is a lawful claim against the County of Maui.

It was further agreed in said statement that the professional services rendered by counsel in the case of *Territory* v. *Machado* in the circuit court and supreme court were necessary for the proper defense of said case and that those rendered in the civil action for damages, entitled *Drapesa* v. *Machado,* were necessary to protect the rights of Machado in said cause; that said services have been rendered and that the amounts charged for the same, as set forth in said claim, are reasonable; that all the witnesses designated in the claim were subpoenaed by Machado and appeared and testified and that the amount charged for attorney's fees in said claim is correct; that the court reporter's notes of the testimony in *Territory* v. *Machado* were duly transcribed by the reporter and a certified copy of the record was prepared by the clerk and the amounts claimed therefor are correct; that there has been no dispute regarding the accumulated amount of salary claimed to be due Machado for the period of suspension. Demand has been made upon the auditor to draw his warrant upon the county treasurer in payment of said claim and the

demand has been refused though there are sufficient funds in the county treasury with which to pay the same. In said statement it is stipulated by the parties that judgment may be entered in this court in accordance with its views upon the agreed facts, either that C. B. Machado's claim is a lawful claim and that the auditor be directed to draw his warrant in payment of the same or so much thereof as the court may hold to be lawful, or that said claim is not a lawful one and that said auditor cannot draw a warrant in payment of the same. The items for which the Maui board of supervisors seeks to indemnify Machado are as follows:

In *Territory* v. *Machado:*

| | |
|---|---:|
| Witness fees | $ 92.20 |
| Attorney's fee, circuit court | 350.00 |
| Attorney's fee, exceptions to supreme court | 400.00 |
| Transcript of evidence | 99.75 |
| Transcribing record | 23.75 |

In *Drapesa* v. *Machado* (civil proceedings):

| | |
|---|---:|
| Attorney's fees | 100.00 |
| Salary covering period of suspension | 298.30 |

| | |
|---|---:|
| Total | $1,364.00 |

Three questions are presented by the foregoing statement. They involve the power or the lack of power of the supervisors, in the circumstances named, to indemnify Machado, first, for attorney's fees in the civil proceeding of *Drapesa* v. *Machado,* second, for attorney's fees, witness' fees and transcript in the criminal proceeding of *Territory* v. *Machado,* and third, for nonreceipt of salary covering the period of suspension. The foregoing points will be considered in the order in which they are herein stated.

(1) Upon the first point the authorities appear to be in substantial agreement. The rule is thus stated in 2 McQuillin, Mun. Corp. (2d Ed.), Sec. 532 (p. 218): "Where a municipal officer incurs a loss in the discharge of his offi-

cial duty in a matter in which the corporation has an interest and in the discharge of a duty imposed or authorized by law and in good faith, the municipal corporation has the power to appropriate funds to reimburse him, unless expressly forbidden. And this it may do although it may turn out that the officer exceeded his legal rights and authority. Thus where a mayor, who in the performance of the duties of his office, in good faith exceeds his authority which results in a judgment against him for false imprisonment, it is competent for the city to indemnify him for the expenses of such judgment" (citing in footnotes *Sherman* v. *Carr,* 8 R. I. 431, approved in *Roper* v. *Laurinburg,* 90 N. C. 427, 7 Am. & Eng. Corp. Cas. 130). "So it has been held to be legal for a town to appropriate a reasonable amount of its funds to employ counsel to defend its police officers in actions for false imprisonment" (*Roper* v. *Laurinburg, supra*). "Cases may and often do arise in which towns may assume to indemnify their agents where the result of a trial at law clearly shows that the acts were illegal, provided. such acts were done by the agents in the bona fide discharge of their duties. It may assume the expense of a suit against its agent or servant in which the interests of the municipal corporation are directly involved. Where a police officer in the discharge of his duty, in attempting to kill a mad steer at large in a crowded street, shot a boy, who recovered damages therefor, the city, it was held, had a right to reimburse him for the amount paid as damages" (*State* v. *St. Louis,* 174 Mo. 125, 73 S. W. 623, 61 L. R. A. 593). " * * * The true test in such cases is, did the act done by the officer relate directly to a matter in which the city had an interest, or affect municipal rights or property or the right or property of the citizens which the officer was charged with a duty to protect and defend?" (*State* v. *St. Louis, supra.*) "It has been said that in order to justify the expenditure of

money by a municipal corporation in the indemnity of one or any of its officers for a loss incurred in the discharge of their official duty, three things must appear. First, the officer must have been acting in a matter in which the corporation had an interest. Second, he must have been acting in discharge of a duty imposed or authorized by law. And third, he must have acted in good faith" (citing *Hotchkiss* v. *Plunkett,* 60 Conn. 230, 233, 234, 22 Atl. 535). The same rule is thus stated in 43 C. J. p. 695: "It is within the discretionary power of a municipality to indemnify one of its officers against liability incurred by reason of any act done by him while in the bona fide discharge of his official duties, and the municipality has the right to employ counsel to defend the officer or to appropriate funds for the necessary expenses incurred by him in such defense." See also 43 C. J., p. 808, Sec. 1392, and *Moorhead* v. *Murphy,* 94 Minn. 123, 102 N. W. 219, 110 A. S. R. 345, 68 L. R. A. 400. Quoting from the case last above cited: "It would seem, therefore, to be the wisest to leave the indemnification of the officer to the discretion of those who represent the interests of the city, that, on the one hand, they should not be without the power to indemnify a meritorious officer, acting in good faith, for the consequences of his conduct, and, on the other hand, they should not be obliged to protect every officer, though acting in good faith, under circumstances which seem to them to indicate a blamable want of care and caution." The foregoing quotation is repeated with approval in *Sherman* v. *Carr, supra,* with this addition: "And it is not for us to inquire as to the wisdom or discretion with which those powers were exercised." No local statute is in conflict with the rule thus stated. While a statute (Act 154, L. 1927,) prevents the supervisors from requiring the county attorney to defend in cases like *Drapesa* v. *Machado,* the same statute permits them to require such defense where no

criminal proceedings are likely to arise out of the matter; and no statute forbids them to employ special counsel in such civil cases. Section 1674 of the County Government Act (Ch. 116, R. L. 1925,) provides in part: "Nothing in this chapter contained shall preclude the board of supervisors of any county from retaining or engaging special counsel when in their opinion such action may seem to be desirable or required."

No statute and no legal principle conflicting, we conclude that it is within the power of a county board of supervisors to indemnify a police officer for attorney's fees incurred in defending himself in a civil action for damages for injury inflicted by him in making an arrest in the circumstances above set forth.

(2) The auditor in his brief admits that "attorney's fees, civil case for damages, $100.00, might be legally paid, in the sound discretion of the board of supervisors," but urges that "nowhere in any of the cases cited nor in any case counsel for respondent has been able to find is there any authority for reimbursement of any public officer for expenses incurred in the defense of criminal charges," and submits that "to hold that Machado may be legally reimbursed for expenses of litigation in defending himself from the charges in the indictment would be contrary to law and contrary to public policy." In support of this position counsel for the auditor cites *Schieffelin* v. *Henry*, 123 Misc. 792, 795, 206 N. Y. S. 172, to the following effect: "Ordinarily where a public official defends himself on a charge of crime he benefits nobody but himself, and any expenditure incurred thereby is not for a city purpose, but for the purely personal and private purpose of keeping himself out of jail." *Kilroe* v. *Craig*, 203 N. Y. S. 71, is cited to the same effect; and *Chapman* v. *City of New York*, 61 N. E. 108, is cited to the effect that even the legislature is without power to authorize such a payment.

In principle we see no reason why in criminal cases a rule diametrically opposed to that applicable, as above set forth, in civil cases, should be adopted.

As set forth in the earlier report of this case on exceptions in 30 Haw. 487, 488, 489, at the trial of the case on its merits there was testimony "that a complaint had been sworn to by one Bill John before the district magistrate of Makawao, on the Island of Maui, charging Felipe Molina, the person upon whom the assault and battery is alleged to have been committed" (and who is the same person herein referred to as Felipe Drapesa), "with having been present on the 12th day of May, 1927, at a place where a gambling game was being carried on and at which money was won or lost. Upon this complaint the district magistrate issued a warrant for the arrest of Felipe Molina and placed it in the hands of the defendant, Machado, who was a duly appointed and authorized police officer, for execution. On the day the warrant was issued and placed in Machado's hands he went to the laborer's camp at Keahua, where Felipe lived, for the purpose of arresting him. The defendant testified in substance that when he informed Felipe what he was there for and undertook to arrest him Felipe made such effective resistance with an automobile jack and a knife that he (Machado) was obliged to abandon his purpose and returned home; that upon reaching home he telephoned a deputy sheriff, named Silva, to whom he explained that Felipe refused to come with him and had drawn a knife on him; that Silva told him to go back and get his man; that he then armed himself with a gun and a pair of handcuffs and returned to the camp, where he again found Felipe who was still in a belligerent mood and refused to submit to arrest; that Felipe was armed with a knife and when he (Machado) told him to put the knife down and come with him Felipe refused and that he then approached Felipe for the purpose of handcuffing him and

when Felipe came at him with the knife raised in his hand he shot him in the leg; that Felipe continued to advance upon him, whereupon he fired a second shot which took effect in Felipe's arm; that Felipe then cut him (Machado) on the arm, severing two or three blood vessels, whereupon he fired a third shot, which brought Felipe to the ground."

The fact that in making the arrest Machado was acting in performance of his duty as a police officer, in good faith, was expressly admitted as hereinabove set forth. The arrest was for the benefit of the public whose agent he was. It was made under the command of a superior officer, whose order in the premises he could not have disobeyed without dereliction of duty. The arrest was not made in his own personal interest nor in any wise in his individual capacity, though he was under personal responsibility not to make the same illegally.

That the county may, in the circumstances and to the extent named, accept the burden of a civil defense, has herein already been decided. Section 1674, R. L. 1925, cited in support of that position, makes no distinction in this respect between civil and criminal cases and in our opinion none exists in principle. We conclude that the supervisors were acting within their discretionary power when they voted to indemnify Machado for the items named in the criminal proceeding.

(3) The suspension of Machado by his superior officer, the sheriff of Maui, followed the indictment of Machado by the grand jury and was expressly limited to the interval pending the disposition of the criminal charge in said indictment set forth. It did not purport to remove him from office nor to deprive him in any event of his pay but left those possible results to await a proper investigation of his guilt or innocence. After the entry of the nolle prosequi Machado was duly reinstated by the sheriff and his

salary, theretofore withheld, was directed by the board of supervisors to be paid to him. There is nothing in the statement of facts to justify a conclusion that the steps thus taken by the sheriff and the board of supervisors conflicted in any way with the terms of the original suspension. The word "suspension" itself carries with it no such hard and fast definition as to preclude its being treated with reference to the officer as meaning "temporarily relieved from duty," and with reference to his salary as meaning "temporarily withheld"—in each instance to await the result of investigation. In the circumstances named we conclude that the supervisors were fully empowered to deal with Machado's status as above defined and to vote him the salary thus withheld.

In conformity with the terms of the submission let judgment issue that C. B. Machado's claim is a lawful claim against the County of Maui and directing Eugene Bal, auditor of the County of Maui, to draw a warrant on the county treasurer of Maui county in favor of said Machado for the sum of $1364 in payment of said claim.

*E. Vincent* for plaintiff.

*E. R. Bevins,* County Attorney of Maui, for defendant.