### CITY OF MOORHEAD v. T. L. MURPHY.[1]

January 20, 1905.

Nos. 14,153—(194).

**Police Officer.**

    In the absence of prohibitive charter provisions, a municipality has the power to reimburse a police officer for expenses and attorney's fees incurred in the defense of an action for false imprisonment; it appearing that the officer was acting in good faith in the exercise of his official duties.

The common council of the city of Moorhead having allowed and caused to be paid a bill incurred by defendant while acting as chief of police of said city for attorney's fees and disbursements in defending an action for false arrest and imprisonment, an appeal was taken by

[1] Reported in 102 N. W. 219.

plaintiff city to the district court for Clay county. Thereupon defendant filed a complaint setting up the facts and praying that the appeal be dismissed. From an order, Baxter, J., sustaining a demurrer to this complaint, defendant appealed. Reversed.

*Wm. R. Tillotson* and *F. H. Peterson,* for appellant.

*James M. Witherow,* for respondent.

LEWIS, J.

Plaintiff city is a municipal corporation, and defendant was the duly appointed, qualified, and acting chief of police for 1901 and 1902. February 20, 1902, defendant effected the arrest of one Allen Blood for a violation of a city ordinance. The following April 11 Blood commenced an action in the United States court against defendant to recover damages for false arrest and imprisonment. The cause was tried at the June, 1902, term of the United States District Court at Fargo, North Dakota, and defendant employed certain attorneys to represent and defend him at such trial. The city attorney of plaintiff corporation also appeared, by virtue of his office, and assisted in the defense. August 1 thereafter, the attorneys so employed rendered to defendant a bill for $300 for their services, which, together with a bill for disbursements necessarily incurred in the conduct of litigation, amounting to $90, he presented to plaintiff city, and on the following December 8 the common council duly allowed and paid the bill, and the money received by defendant was used by him in paying the attorney's fees and in reimbursing himself. After the bill was allowed and paid by the city, and within the time allowed by law, upon the request of seven taxpayers, the city attorney appealed from the decision of the council allowing the bill. The appeal having been perfected, defendant here served his complaint, which stated the facts substantially as above set forth. The complaint was demurred to upon the ground that it did not state facts sufficient to constitute a cause of action against plaintiff, and the demurrer was sustained.

The question presented upon this appeal is whether, under the facts disclosed, the council had authority to pay the bill for disbursements and attorney's fees incurred in defending its chief of police in an action brought against him to recover damages for false imprisonment while in the exercise, in good faith, of his official duties.

The general welfare, good order, protection, and safety of the people of the city are among the specific duties imposed upon the common council to accomplish by appropriate legislation. In furtherance of this authority, city ordinances were passed for the prevention of crime, and it is made the duty of the chief of police to serve and execute warrants issued out of any justice court of the city, and to pursue and arrest any person charged with or who has committed any violation of any city ordinance; and he is constituted one of the conservators of the peace, with authority to command the peace, and in a summary manner suppress all riotous and disorderly proceedings. Unless expressly prohibited, the municipality possessed the general powers of a municipality at common law, and under the common law it was authorized to secure special legal assistance. Horn v. City of St. Paul, 80 Minn. 369, 83 N. W. 388.

We have been unable to discover any provisions in the city charter which either expressly or by implication are in conflict with the common-law power to employ such legal assistance. It is made the duty of the county attorney, when directed by the council, to appear and conduct the defense in any action against any officer or employee of the city on account of any act done by him in the performance of his official duties, but the common council is not limited to the services of such attorney. Sections 136 and 137 of the charter are provisions with reference to the letting of contracts to the lowest responsible bidder, and have no reference to and are not limitations upon the common council in regard to the subject here under consideration.

The law upon this question is well defined in Sherman v. Carr, 8 R. I. 431. In that case the mayor of the city was sued upon a charge of false imprisonment, and he made defense upon the ground that the acts complained of were committed by him in his capacity as mayor. A verdict having been recovered against the mayor, the common council made an appropriation to reimburse him, and a suit was brought by a taxpayer to enjoin payment of the same. The question before the court is stated thus: "Whether it is in the power of the city council to indemnify one of the officers of said city, who, performing the duties of his office in good faith, has exceeded the powers of that office, and thereby incurred damages at law?" The city charter prohibited officers of the municipality from doing or transacting any matters except

such as belonged to the legitimate duties of a municipal body within its own province, or to vote money for any object for the regular, ordinary, and usual expenses of the city. The court held that it was one of the ordinary expenses of the city to protect its officers who in good faith exercised the functions of the office.

The court reasoned that it was in the interest of good government, and for the benefit of the city, that such power to indemnify should be exercised; that to hold an officer entirely responsible for his acts while in the performance of his official duties would naturally tend to make him overcautious, if not timid, to the detrimemnt of the public service. On the other hand, if such officer had the right to fall back upon the treasury of the city, there would be danger of his becoming reckless and overbearing in the exercise of the powers of his office. The court said: "It would seem, therefore, to be the wisest to leave the indemnification of the officer to the discretion of those who represent the interests of the city, that, on the one hand, they should not be without the power to indemnify a meritorious officer, acting in good faith, for the consequences of his conduct, and, on the other hand, they should not be obliged to protect every officer, though acting in good faith, under circumstances which seem to them to indicate a blamable want of care and caution."

Another interesting case is that of Cullen v. Town, 103 Ind. 196, 2 N. E. 571, where the marshal of the town arrested a person for an assault upon a peaceable citizen, and was sued for false imprisonment. The board of town trustees employed attorneys to defend the marshal in that action, which they successfully did. The town having refused to pay for the services, the attorneys brought an action to recover the same, and the defense was that the employment of the attorneys by the board of trustees was ultra vires. The court held that the town was bound by its contract, placing its decision upon the ground that one of the essential things in the enforcement of the laws is that the people shall have that respect for the constituted authorities that arises out of a common understanding that the laws will be rigidly executed—following the reasoning of the Rhode Island case.

Other cases bearing upon this subject are Fuller v. Inhabitants, 11 Gray, 340; Bancroft v. Inhabitants, 18 Pick. 566; State v. Council, 38 N. J. L. 430; Pike v. Middleton, 12 N. H. 278. Mr. Dillon, in the

fourth edition of his work on Municipal Corporations (section 147), states the rule thus: "Where a municipal corporation has no interest in the event of a suit, or in the question involved in the case, * * * it cannot assume the defense of the suit, or appropriate its money to pay the judgment therein. * * * But such a corporation has power to indemnify its officers against liability which they may incur in the bona fide discharge of their duties, although the result may show that the officers have exceeded their legal authority." The authorities on this subject are collected under note 6, p. 1160, 20 Am. & Eng. Enc. (2d Ed.).

According to the facts stated in the complaint, the officer was acting in good faith in the discharge of his duties. Under the authorities above cited, not being prohibited by the charter, the city council had, in the first instance, authority to employ the attorneys, and enter into a contract with them for their compensation. Having such power, they could afterwards ratify that which they were originally authorized to do; and, when the bill for such services was presented to the common council, so far as appears from the facts set forth in the complaint, their action in allowing the bill must be treated as an intention to approve of their conduct, and accept the same for the benefit of the city.

It is not to be understood that what has been said is in conflict with the right of the taxpayers to have the proceedings reviewed upon appeal in the district court. We have merely determined the legal question that, as a matter of law, the city council had authority originally to make a contract with the attorneys for their compensation, and that, upon the facts stated in the complaint, their action in allowing the bill will be deemed to be an expression of approval and reimbursement.

Order reversed.