### CITY OF CORSICANA v. BABB et al.
### (No. 715–4304.)

(Commission of Appeals of Texas, Section A. Feb. 2, 1927.)

1. Municipal corporations ⊚�19(3)—City has implied power, exercisable at discretion, to protect policemen in discharge of duties.

City authorized to appoint policemen, with duties of peace officers, has implied power, exercisable at its discretion, to provide means for policemen's protection in discharge of official duties, in absence of charter provision to contrary.

2. Municipal corporations ⊚�214(3)—City has implied power to employ attorney to prosecute slayer of policeman killed in exercise of duties.

Where policeman is killed in bona fide performance of official duties, city has implied power to employ attorney to prosecute slayer and appropriate city funds therefor, in absence of clear provision to contrary in charter, such

implied power resting in considerations of public policy.

3. Municipal corporations ⊚�19(3)—City has discretion as to what means it will select for protection of policemen in discharge of duties.

Means of carrying out city's implied power to protect policemen in bona fide discharge of official duties is matter of discretion, with selection of which courts will not interfere.

4. Municipal corporations ⊚�and871—Funds appropriated to indemnify city officer against liability for acts done in carrying out official duties constitute public expense.

Indemnification of city officer against liability incurred by reason of acts performed in carrying out official duties is municipal function, for which expenses may be appropriated from city's fund, constituting public expense.

5. Municipal corporations ⊚�214(3)—City employing attorney to prosecute one slaying policeman on duty becomes bound to pay compensation.

Though city is under no duty to employ attorney to prosecute slayer of policeman or to defend policeman committing homicide in exercise of official duties, where municipality does employ attorney, it becomes legally bound to pay his compensation.

6. Municipal corporations ⊚�19(3)—Taxpayers could not enjoin payment of fees to attorneys appointed by city to prosecute policeman's slayer and defend policemen charged with homicide in performing duties (Home Rule Amend. to Const.).

Where city employed attorneys to assist in prosecution of slayer of policeman on duty and to assist in defense of policemen committing homicide on duty, city could not be enjoined, at suit of taxpayers, from paying attorneys' fees, as city had implied power to employ attorneys under its charter, given pursuant to provision of Home Rule Amendment to Constitution (article 11, § 5 [see Laws 1911, p. 284]),

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by W. A. Babb and others against the City of Corsicana. Judgment for plaintiff refusing to dissolve a temporary writ of injunction was affirmed by the Court of Civil Appeals (266 S. W. 196), and defendant brings error. Judgment of trial court and Court of Appeals reversed, and judgment rendered.

Fred Upchurch, City Atty., J. S. Callicutt, and Richard Mays, all of Corsicana, for plaintiff in error.

Gibson & Lovett, of Corsicana, for defendants in error.

HARVEY, P. J. The question for determination in this case is that of the power of the city of Corsicana to make two certain contracts of employment, one with Hon. Richard Mays and the other with Hon. J. S. Callicutt, and to perform the same by paying to the said Mays the sum of $500 and to

the said Callicutt the sum of $750 from funds belonging to the city.

On January 23, 1924, Vessie Arp, a policeman in the city of Corsicana, was killed while undertaking to make an arrest, and the grand jury of Navarro county later returned an indictment against Roger Q. Grace and Maude Grace, charging them with murder in connection with said killing. By proper order, the city commission of the city of Corsicana employed the said Richard Mays to assist in the prosecution of the two Graces, and agreed to pay him for that service the sum of $500.

On March 6, 1924, while Spurgeon Williams and Jim Green, who were policemen of said city, were undertaking to make an arrest of one Jack Coker for the alleged violation of law in the city of Corsicana, said Coker was shot and killed and later Williams and Green were indicted by the grand jury of Navarro county for the murder of Coker. By proper order, the city commission employed the said J. S. Callicutt for the purpose of representing and defending the said Williams and Green as attorney on said charge of murder. The sum of $750 was fixed as the amount of Callicutt's compensation.

Defendants in error W. A. Babb and L. A. Pinkston, who reside in the city of Corsicana and are taxpayers, obtained a temporary writ of injunction against the city of Corsicana, restraining it from paying the two fees above mentioned. On a hearing, in chambers, of a motion filed by the city to dissolve such injunction, the district court of Navarro county refused to dissolve the injunction, and on appeal the Court of Civil Appeals affirmed the action of the district court. 266 S. W. 196.

The city of Corsicana has a duly elected city attorney, and Navarro county has a duly elected county attorney, who represent the state in the district court of that county.

The charter of the city of Corsicana was adopted at an election held for that purpose December 11, 1917, under the provisions of what is known as the Home Rule Amendment to the Constitution (article 11, § 5 [see Laws, 1911, p. 284]). Under its charter the city is expressly authorized to appoint and have policemen who are charged with all the duties of peace officers, including that of making arrests.

[1] Whenever a city is authorized to appoint and have policemen charged with the duties of peace officers, the city, in the absence of charter provision to the contrary, has the implied power, exercisable at its discretion, to provide suitable means for the protection of its policemen in the bona fide discharge of their official duties. The duties of a policeman are performed for the benefit of the public, and the public is directly concerned in preserving and protecting these officers from the hazard of death or bodily injuries to which the performance of their official duties expose them. Aside from any considerations purely personal to the officer, it is for the public good that these officers, as instruments through which the city performs its functions, shall be shielded from the personal hazards which attend the discharge of their official duties.

[2, 3] If a city policeman be slain in the bona fide performance of his official duties, the city has implied power, unless such power be clearly denied in its charter, to employ an attorney to prosecute his slayer and to appropriate city funds to that purpose. The foundation of this power does not rest in theories of rendering benefit to the dead officer, for he can derive no benefit from such prosecution; nor does it rest in motives of retaliation for his death; but it does rest in those considerations of public policy which justify the city in protecting the instrumentalities through which it performs its functions, and in adopting means deemed suitable for the purpose. The selection of these means is confided to the discretion of the city, and courts will not undertake to control the city's discretion in this respect, unless the lack of relation of the selected means to the end sought to be attained be clearly apparent. The city, in the present instance, might well have considered that its employment of special prosecution in the case against the Graces, as a means calculated to deter law breakers from killing its policemen in the future, would result in diminishing the hazard of death or bodily injury to those who might thereafter serve the city in the capacity of policemen. For this reason, it cannot be said that there is no relation between the services of special counsel in such a case and the protection of policemen in the service of the city.

[4-6] Indemnification of a city officer against liability incurred by reason of an act done by him in the bona fide performance of his official duties is a municipal function. That expenditures made in indemnifying the officer against such a liability do not constitute a gratuity, but constitute a public expense of the municipality for which city funds may be used, is sustained by the weight of authority in this country. A city, therefore, is invested with the discretionary power to employ attorneys to defend one of its policemen against a criminal charge founded upon an act done by such officer in the bona fide performance of his official duties. In such a case the city is under no duty or obligation to employ an attorney, or to indemnify the officer for the payment of his fees; but. if it do employ the attorney, the municipality becomes legally bound to pay his compensation. 28 Cyc. 454; Cullen v. Carthage, 103 Ind. 196, 2 N. E. 571, 53 Am. Rep. 504; State v. St. Louis, 174 Mo. 125, 73 S. W. 623, 61 L. R. A. 593; Bradley v. Town of Hammonton, 38 N. J. Law, 430, 20 Am. Rep. 404; Bancroft v. Lynnfield, 18 Pick. (Mass.) 566, 29 Am. Dec. 623; City of Moorhead v. Murphy, 94 Minn. 123, 102 N. W. 219, 68 L. R. A. 400, 110 Am. St. Rep. 345,

290 S.W.—47

3 Ann. Cas. 434; Fuller v. Groton, 11 Gray (Mass.) 340; Roper v. Laurinburg, 90 N. C. 427; Sherman v. Carr, 8 R. I. 431; 2 McQuillin on Mun. Corp. § 514; 1 Dillon Mun. Corp. (5th Ed.) § 307.

We therefore recommend that the order or judgment of the trial court refusing to dissolve said temporary injunction, and that of the Court of Civil Appeals affirming same, be reversed, and that judgment be here rendered dissolving said temporary writ of injunction.

CURETON, C. J. Judgments of the Court of Civil Appeals and the district court are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.