

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711 *overruled where conflicts*

*V-232*
*WW-662*
*WW-1036*
*WW-1385*

November 9, 1970

Honorable Charles A. Allen
Criminal District Attorney
Harrison County
P. O. Box 776
Marshall, Texas 75670

OPINION NO. M-726

Re: May the Commissioners'
Court of Harrison
County provide funds
for the defense of the
Sheriff of its County,
and his Deputies, in a
civil rights action
against them in U. S.
District Court, South
Dakota, under the stated
facts.

Dear Mr. Allen:

Your request for an opinion presents the question
stated below:

"Whether or not the Commissioners' Court
can provide the funds for the defense
of the Sheriff and his Deputies in the
United States District Court for the
Southern District of South Dakota?"

We quote from your letter as follows:

"On October 23, 1969 an armed robbery oc-
curred in Harrison County. In the pro-
cess of investigation the identity of one
of the robbers was established by the
accepted procedure prescribed by the penal
code in the identification by photograph.
Five witnesses identified the subject's
photograph, and based upon that and other
investigation, Deputy Sheriff Wayne
Scogins signed a complaint against Leo
W. Spradlin for armed robbery. A war-
rant was issued and the subject was
arrested in Canton, South Dakota. The
Governor of Texas and the Governor of
South Dakota, through extradition pro-
ceedings, ordered the subject arrested

-3511-

and returned to Texas. Leo W. Spradlin filed a writ of habeas corpus in Canton, South Dakota and the Sheriff's Office and two of the witnesses went to South Dakota and the witnesses were unable to identify Leo W. Spradlin as one of the armed robbers and Leo W. Spradlin was released in South Dakota. Thereafter, Leo W. Spradlin filed a civil suit in the United States District Court for the Southern District of South Dakota alleging his civil rights were violated by the Sheriff and two of his deputies of Harrison County, Texas. Everything that the Sheriff and his deputies did was in their official capacity."

In City of Corsicana v. Babb, et al, 290 S.W. 736 (Tex.Comm.App. 1927) it was held as follows:

"(4-6) Indemnification of a city officer against liability incurred by reason of an act done by him in the bona fide per- formance of his official duties is a munici- pal function. That expenditures made in indemnifying the officer against such a liability do not constitute a gratuity, but constitute a public expense of the municipality for which city funds may be used, is sustained by the weight of authority in this country. A city, therefore, is in- vested with the discretionary power to em- ploy attorneys to defend one of its police- men against a criminal charge founded upon an act done by such officer in the bona fide performance of his official duties. In such a case the city is under no duty or obligation to employ an attorney, or to in- demnify the officer for the payment of his fees; but, if it do employ the attorney, the municipality becomes legally bound to pay his compensation. 28 Cyc. 454; Cullen v. Carthage, 103 Ind. 196, 2 N.E. 571, 53 Am.Rep. 504; State v. St. Louis, 174 Mo. 125, 73 S.W. 623, 61 L.R.A. 593; Bradley v. Town of Hammonton, 38 N.J. Law, 430, 20

Am. Rep. 404; Bancroft v. Lynnfield, 18
pick. (Mass.) 566, 29 Am. Dec. 623; City
of Moorehead v. Murphy, 94 Minn. 123, 102 N.W.
219, 68 L.R.A. 400, 110 Am.St.Rep. 345, 3 Ann.
Cas. 434; Fuller v. Groton, 11 Gray (Mass.)
340; Roper v. Laurinburg, 90 N.C. 427; Sherman
v. Carr, 8 R.I. 431; 2 McQuillin on Mun. Corp.
Sec. 514; 1 Dillon Mun. Corp. (5th Ed.) Sec.
307." (Emphasis added.)

The general rule in the United States is that a public
body, acting in good faith, may indemnify public officials
for legal expenses incurred in suits brought against them for
acts committed in the discharge of their duties. 130 A.L.R.
736, Annotations; 42 Am.Jur. 765, Public Funds, Sec. 63;
L.R.A. 1916 D 92, 93. Virtually all of the authorities cited
were decided upon general constitutional principles and in-
volve a conclusion by the courts of implied authority in the
absence of a specific authorizing statutory enactment or
charter provision. These decisions were based upon the general
interest of the public body in law enforcement and upon the
premise that such a matter related to the general public in-
terest, whether upon a city, county, or state level.

The Annotation at 130 A.L.R. 736 deals with the pay-
ment of attorney's services in defending actions brought
against officials individually as being within the power of
the public body. The power to employ an attorney to repre-
sent a public body in court, according to the annotation,
"is a necessary incident to its power to sue and be sued.
Most municipal corporations of any magnitude employ an attor-
ney upon an annual salary. Such attorney is a municipal
officer....and attends to all the ordinary litigation to
which the municipality is a party.... The general rule is
that a municipal corporation or other public body may in-
demnify public officials, acting in good faith, for legal
expenses incurred in suits brought against them for acts com-
mitted in the discharge of their duties."

The decision in City of Corsicana y. Babb, supra, be-
ing the only Texas decision on the point, brings Texas under
the general rule and aligns her along with the majority of
the states of the Union. While it involved a city rather
than a county, we nevertheless have concluded that such a
rule may equally apply to a county.

Counties are political subdivisions of the state,
and the Constitution of Texas recognizes counties as muni-
cipal corporations along with cities and towns. Abilene

v. State, 113 S.W.2d 631 (Tex.Civ.App. 19, error dism.);
Article XI, Constitution of Texas. They are recognized
as agencies or arms of state government, created by the
sovereign will for the purpose of discharging various
governmental obligations, among which is the administra-
tion of justice. They are bodies politic with power to
sue and be sued. See Interpretive Commentary under Art.
XI of the Texas Constitution, Vernon's Texas Constitution,
Vol. 2, pp. 629-639, and cases cited thereunder; Article
1572, Vernon's Civil Statutes.

"County officers are in fact officers of the state,
hence the general principles of law applicable to other
state officers apply to them." 15 Tex.Jur.2d 278, Counties,
Sec. 49. While the County Attorney's office is elective,
the Constitution specifically authorized the Commissioners
Court to fill a vacancy in the office of County Attorney.
Article V, Section 21, Constitution of Texas. It is the
principal duty of both district and county attorneys to
investigate and prosecute violation of all criminal laws.
Shepperd v. Alaniz, 303 S.W.2d 846 (Tex.Civ.App. 1957, no
writ). Although it is not a prescribed legal duty of the
county attorney to represent the county in its general
legal business or to conduct civil actions, it has been
held that the Commissioners' Court nevertheless has the
implied power to employ private counsel as its attorney to
represent the county in such matters. Hill Farm, Inc.
v. Hill County, 425 S.W.2d 414 (Tex.Civ.App. 1968, affd.
Tex. Sup. 436 S.W.2d 320); 15 Tex.Jur.2d 318, Counties,
Sec. 92.

While the powers of the Commissioners' Court of a
county are limited to the county business, it is settled
that a county has:

> "...implied authority to do what may be
> necessary in the exercise of the duties
> or powers expressly conferred on it, and
> the expression 'county business' is to
> be given a broad and liberal construction
> so as not to defeat the purposes of the
> law."

15 Tex.Jur.2d 265-266, Counties, Sec. 37, and numerous
cases there cited.

Article 2351, paragraph 15, Vernon's Civil Statutes, provides that the Commissioners' Court "shall have all such other powers and jurisdictions, (not therein enumerated) and shall perform all such other duties, as are now or may hereafter be prescribed by law." (Words in parentheses ours.) Although the County Sheriff is an elected official, the Commissioners' Court has the power to appoint a sheriff in the event of a vacancy. 52 Tex.Jur.2d 287, Sheriffs, etc. Sec. 5. Sheriffs, deputies and constables are peace officers and public officers for the county, and it is their duty as such county officers to preserve the peace within their jurisdiction. Their duties include the serving of process and making arrests. 52 Tex.Jur.2d 283, Sheriffs, etc. Sec. 2; p. 289, Sec. 8; pp. 292-293, Sec. 12. Article 1581d, Vernon's Civil Statutes, expressly provides that in all counties having (5,000) or more cattle, sheep, and goats rendered for taxation, the Commissioners' Court are authorized to employ and pay, in addition to the County's duly constituted peace officers, such law enforcement officers as the Court may deem necessary "to aid in the enforcement of all penal laws of this state, and ferreting out and detecting any violation thereof." There are no differences between the powers and duties of the sheriff and his deputy. 52 Tex.Jur.2d 335, Sheriffs, etc. Sec. 55. Under Article XVI, Section 61, Constitution of Texas, the Commissioners' Court must compensate all county and precinct law enforcement officers, including sheriffs and their deputies. Statutes have been enacted to implement this power. Articles 3883h, Sec. 4, 3883l, Sects. 1-5, 8, 3902, 3902f-1, 3902f-2, 3902j, Vernon's Civil Statutes. The county is authorized to pay all reasonable expenses necessary in the proper and legal conduct of the Sheriff's office as may be allowed by the Commissioners' Court. Article 3899, subd. (b), Vernon's Civil Statutes. The express powers of the Commissioners' Court to pass upon and expend necessary funds for the employment of law enforcement officers and their reasonable costs in carrying out law enforcement give rise to the incidental or implied power to expend such funds as it may deem necessary to protect County law enforcement officials carrying out their duties of law enforcement. This was the holding in the Babb Case, supra.

It is evident that the county's public interest and concern with law enforcement is analogous to and certainly no less than that of a city, town or other type of municipal corporation; and it can make no material difference in this respect as to nature of the duties involved whether the particular peace officer works for the city, the county, or the state. Regardless of whether the County appoints the Sheriff or whether he be elected by the people of the County,

it nevertheless has policemen charged with the duties of peace officers, with the duty to pay their salaries and all reasonable and necessary expenses incurred in the performance of their duties, and as such, the County business may be deemed to include, in the exercise of its discretion, the implied power to provide suitable means for the protection of its policemen in the bona fide discharge of their official duties. Their duties are performed for the benefit of the public, or county, which is directly concerned in preserving and protecting these officers from the many hazards to which the performance of their duties expose them.

The Commissioners' Court jurisdiction over "county business" is broad and is governed by a liberal rule of construction, certainly as to the subject of law enforcement, as shown in Rodgers v. County of Taylor, 368 S.W.2d 794, 796 (Tex.Civ.App. 1963, error ref., n.r.e.) In that case, the Court upheld the Commissioners' Court's employment of a reporter to transcribe grand jury testimony. The lack of authority of the court to pay for his services, which were contracted for by the District Attorney, was challenged, and the Court said:

> "The benefits which the County derived from Rodgers services are those general intangible benefits which flow to the public generally from good law enforcement."

This was the basis of the holding of the Commission of the Appeals in Corsicana v. Babb, supra, 290 S.W. at page 737, wherein it was specifically held that:

> "...the city, in the absence of charter provision to the contrary, has the implied power, exercisable at its discretion..."

to defend their peace officers or to provide indemnification for their acts done in carrying out their official duties and which could be deemed a lawful public expense. In the course of its decision, the Court further held that the selection of the means of protection was also a matter of discretion, with which the courts will not interfere.

Thus, whether the County decides to indemnify and pay the Sheriff and Deputies after the lawsuit is completed or elects to provide an attorney and their legal defense before and during the trial thereof, is a matter left solely to their discretion. Likewise, it may legally and properly refuse to do either, leaving the law enforcement officer solely to his own resources.

In City National Bank of Austin v. Presidio County, 26 S.W. 775 (Tex.Civ.App. 1894), the Court held that while there was no statute expressly authorizing such, the Commissioners' Court had implied power to employ an attorney to represent the County Judge and Commissioners in a suit brought against them as individuals. The Court said at page 777:

> "We are clearly of opinion that the commissioners did not exceed their powers in the employment of the attorneys, so far as the suit of Carothers against the county judge and commissioners was concerned. While it was nominally a suit against them as individuals, its design and effect was to obstruct and control the performance of their official acts, and we are not disposed to hold in such a case that they must do nothing towards defending such suit, or must employ counsel at their own expense. They had power to employ counsel, and to defray the reasonable expense thereof out of the county funds." (Emphasis added.)

The Court, in reaching its decision, further held that the employment of counsel was "...done in the interest and business of the county..." and that, "The validity of their acts was not affected by the fact that they were mistaken, or that there was an adverse decision of the question..." (the lawfulness of their acts being litigated) 26 S.W. 777.

It has been repeatedly held by this office that the Commissioners' Court has the power and authority to employ attorneys to prosecute claims and defend suits and to pay for such services out of the General Fund of the County whenever the county, as a whole, could be regarded as interested and affected in such proceedings. Attorney General Opinion Nos. WW-662 (1959). V-995 (1950), V-232 (1947), and O-4955 (1942).

Under the holding in City National Bank of Austin v. Presidio, supra, the county, as a whole, may be affected and directly interested in the litigation even though the county was not a party and its officers are sued as individuals and not in their capacities as county officials. It

is thus necessary to look at substance rather than form in this regard.

The facts of the question under consideration indicate that the Sheriff and his deputies are being sued and must respond thereto and defend themselves in a South Dakota Federal Court. They are being sued for their official acts as law enforcement officers in signing a complaint and making an arrest. While the suit is nominally against them as individuals, its design and effect could be said to impair their discharge of their official duties, both present and future, and affect the interest of the county as a whole. While they are defending themselves in South Dakota, presumably at considerable expense, the County is without their services; and the County may have an interest in protecting their peace officers from such hazards, which may substantially impair the administration of law enforcement in the county.

The case of Machado v. Bal, 31 Haw. 559 (Sup.Ct. Territory of Hawaii 1930) is squarely in point in support of our holding. In that case the Court unanimously upheld the authority of a county to indemnify a county police officer for money he expended as attorney's fees, witness fees and court costs in defending himself against both a civil and criminal suit. Both suits were brought by one whom he had arrested under a valid warrant of arrest in the course of his official duties as a police officer in the enforcement of the criminal laws of the county. The plaintiff in both suits alleged that the officer had unlawfully shot and injured him in the course of the arrest. The County Board of Supervisors ordered the officer to be reimbursed for these expenses, but the county auditor refused to make payment.

The Court expressed no hesitancy in applying to the full extent the law upon which it said the authorities appeared to be in substantial agreement. The Court said:

> "...The rule is thus stated in 2 McQuillin,
> Mun.Corp. (2d Ed.), Sec. 532 (p. 218):
> 'Where a municipal officer incurs a loss
> in the discharge of his official duty in
> a matter in which the corporation has an
> interest and in the discharge of a duty
> imposed or authorized by law and in good

faith, the municipal corporation has
the power to appropriate funds to reim-
burse him, <u>unless expressly forbidden.</u>
And this it <u>may do although it may</u> turn
out that the officer exceeded his legal
rights and authority..." (at p. 562-3).
(Emphasis added.)

Parenthetically we digress to add that the case of <u>City
National Bank of Austin v. Presidio County</u>, 26 S.W. 775,
supra, supports this last statement to the effect that
county officers spend county funds for legal counsel in
defense of their official acts, even though they may be
found to have been in error in doing the acts in question.
(at p. 777, 2d col.).

The Court in <u>Machado</u> then stated the controlling
principle wherein it quoted from <u>State v. St. Louis</u>, 73
S.W. 623, 625 (Mo. Sup. 1903) as follows:

"...'The true test in such cases is,
did the act done by the officer relate
directly to a matter in which the city
had an interest, or affect municipal
rights or property or the right or pro-
perty of the citizens which the officer
was charged with a duty to protect and
defend?'" (at p. 563).

Further, the Court said "...The arrest was for the benefit of
the public whose agent he was..." (p.567). It found no dis-
tinction in principle between the authority of the county to
indemnify in a civil or criminal action. (p. 567).

Both this <u>Machado v. Bal</u> case and the <u>City of Corsi-
cana v. Babb</u> case were decided on the basis of broad princi-
ples of government and of the general public interest in law
enforcement and on the basis of the <u>absence of</u> specific
statutes prohibiting the governmental subdivision from allow-
ing the expenses paid from its public monies. <u>The interest
and concern of Harrison County and of its citizens in the en-
forcement of the laws of the sovereign within its boundaries
is certainly not less than the interest of the City of Corsi-
cana and its citizens in the enforcement of those same laws
within its boundaries.</u>

A warrant of arrest may be issued only "... in the name of 'The State of Texas'". Art. 15.02, V.C.C.P. The basis for the issuance of a warrant of arrest, whether a complaint only, or on information or indictment must be "In the name and by authority of the State of Texas." Art. 21.16 and 21.21, V.C.C.P.; Ex Parte Jackson, 96 S.W. 924 (Tex.Crim. 1906); and Wilkes v. State, 237 S.W.2d 992 (Tex. Crim. 1951). Further, the ultimate Texas authority under which the arrest was made in South Dakota was the Governor of Texas, who requested the arrest of the fugitive from Texas in the State of South Dakota pursuant to the Uniform Criminal Extradition Act. (See Statement of Facts at the outset of this Opinion, and Art. 51.13, Sec. 22-23, V.C.C.P.). We have concluded that the Commissioners' Court is not power- less to protect the very sovereignty of the state which is called into question.

The principle declared in the City of Corsicana case (supra) and its application in the Machado case, anplied to the facts upon which this our Opinion is based, compel our conclusion that the principle declared and applied in the City of Corsicana case is likewise fully applicable to the fact situation we have under consideration.

State ex rel La Crosse v. Averill, 110 S.W.2d 1173 (Tex.Civ.App. 1937 no writ), and City of Del Rio v. Lowe, 111 S.W.2d 1208 (Tex.Civ.App. 1937), rev. on other grounds, 132 Tex. 111, 122 S.W.2d 191, are distinguished from City of Corsicana v. Babb, supra, because as stated in the Del Rio case:

> "The city commissioners of Corsicana had
> no personal interest in the matter and
> were not disqualified, for that reason,
> to employ said counsel and use city funds
> for said defense, and it is not believed
> that that case is applicable to a situa-
> tion, such as here involved, where the
> city commissioners have a direct personal
> interest in the contract of employment
> and in the use of city funds for their own
> defense."

Our holding herein is also to be distinguished from the holding in the case of Tompkins v. Williams, 62 S.W.2d 70 (Tex.Comm.App. 1933), wherein it was held that the city was not liable for the negligence of its officers or em- ployees and that any payment for injuries to persons

damaged by them, though they were engaged in the perform-
ance of their duties, would be an illegal gift or donation.

Attorney Generals' Opinions Nos. V-232 (1947), WW-
662 (1959), WW-1036 (1961) and WW-1385 (1962) are hereby
overruled insofar as they are in conflict with this opinion.
These opinions did not consider the Commission of Appeals
holding in City of Corsicana v. Babb, supra, nor any authori-
ties in other states. The cases relied upon in the opinions
made no direct holding on the question here presented but
were based upon the assumption that the County is not liable
for the torts of its officials.

It is, of course, understood from the facts set
forth in your letter, stated above, that in this instance
the Sheriff and his Deputies were properly engaged in the
performance of their official duties, and acting within the
scope of their employment. As such they were presumably
performing their official duties; that is, a public purpose,
and they may be deemed to have acted in the public interest
and in the interest of the county as a whole. Under the
facts and circumstances presented, the Commissioners' Court
in the exercise of its discretion, and in the event the
Commissioners' Court deems it expedient to protect the
county's interest, may provide the funds for the protection
and defense of the Sheriff and his Deputies in the United
States District Court for the Southern District of South
Dakota, who did nothing but their sworn duty in serving a
valid warrant on a defendant as ordered pursuant to the
Texas Penal Code.

## S U M M A R Y

Where the County Commissioners' Court finds
that the Sheriff and his Deputies were prop-
erly engaged in the bona fide performance of
their official duties, and acting within the
scope of their employment, and therefore
they were performing a public purpose and
acting in the public interest and in the in-
terest of the county as a whole and not con-
trary thereto, the Commissioners' Court may,
in the exercise of its discretion, even
though they are under no duty or obligation
to do so, provide the funds for the legal

defense of the Sheriff and his Deputies in
a suit brought against them individually
and not in their capacities as county
officers and wherein the county was not
made a party to such suit. This opinion
is limited in scope to the factual situa-
tion presented.

Attorney General Opinions Nos. V-232 (1947),
WW 662 (1959), WW 1036 (1961), and WW 1385
(1962) are overruled to the extent of con-
flict with this opinion.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Ben M. Harrison
Assistant Attorney General

APPROVED:

OPINION COMMITTEE

KERNS TAYLOR, Chairman
W. E. ALLEN, Co-Chairman

Larry Craddock
John Banks
Gilbert Pena
Robert Flowers

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant