

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

November 12, 1998

The Honorable Judith Zaffirini
Chair, Committee on Health
  and Human Services
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-488

Re:  Whether the board of directors of an appraisal district may reimburse attorney fees for the chief appraiser who was a defendant in a criminal action, and related questions  (RQ-1064)

Dear Senator Zaffirini:

You ask generally whether an appraisal district's board of directors may reimburse attorney fees the district's chief appraiser incurred in defending a criminal action for official misconduct. We conclude that the district may do so under the common law if the board makes certain preliminary determinations. Because a governmental body must determine its authority to reimburse an officer's or employee's attorney fees on a case-by-case basis, our conclusion is necessarily limited to the situation you describe. This conclusion overrules, to the extent of inconsistency, several attorney general opinions written since 1990.

Your nine questions are based upon a situation in Atascosa County. You recount that in 1993 the chief appraiser of that county, Mr. Vernon Warren, was indicted for alleged official misconduct. The indictment centers upon a certain property that had been valued as qualified open-space land under Tax Code chapter 23, subchapter D. According to the indictment, Mr. Warren, as chief appraiser, determined in 1992 that a change in the use of the land had occurred and that the land could no longer be valued as qualified open-space land.[1] Again, according to the indictment, Mr. Warren failed to notify the landowners "as soon as possible after making the determination," as Tax Code section 23.55(e) requires. Ultimately, in April 1996, the trial court granted Mr. Warren's motion for a directed verdict upon the conclusion of the State's evidence.

According to your letter, the Atascosa County Appraisal District's ("appraisal district") Board of Directors voted on January 27, 1994, to pay Mr. Warren's attorney fees contingent upon a determination that payment would be legal. The district attorney informed a board member that the payment might be illegal. Based upon that opinion, the board has not in fact paid any of Mr. Warren's attorney fees.

---

[1]See Tax Code § 23.55(e) (stating that chief appraiser is to make determination that change in use of land has occurred).

You also describe a twist in the facts that you believe may affect our conclusion. Mr. Warren's contract of employment with the appraisal district expired on December 31, 1995, and was not renewed. Thus, you point out, some of Mr. Warren's attorney fees were incurred after he left his post as Chief Appraiser of Atascosa County.

Preliminarily, we suggest that the district attorney's advice to the board in January 1994, that payment of Mr. Warren's attorney fees as they accrued probably was illegal, may have been incorrect. A political subdivision of the state, such as an appraisal district, may provide legal representation for an officer or employee or pay the officer's or employee's attorney fees as they accrue if the political subdivision is authorized to do so either by statute or under the common law.[2] Numerous opinions of this office recognize a political subdivision's common-law authority to provide legal representation to an officer or employee.[3]

In response to your first question, we conclude that the appraisal district board may now vote to reimburse all of Mr. Warren's legal fees, incurred in the official misconduct prosecution, that it considers reasonable if the board is authorized, either by statute or under the common law, to do so. While we find no statute authorizing the appraisal district to pay the chief appraiser's legal fees in this instance,[4] neither do we find any statute preempting or limiting in any way the common law. Accordingly, we will consider the appraisal district's common-law authority to reimburse the chief appraiser's legal expenses.

In our opinion, the common law permits the appraisal district to reimburse the chief appraiser's legal expenses if the board makes two fact findings. First, the board must determine that the suit involved a public interest requiring a vigorous defense, or, conversely, that paying Mr. Warren's legal fees serves a public, not merely Mr. Warren's private, interest. This determination theoretically ensures that the board complies with article III, sections 50, 51, and 52 of the Texas Constitution,[5] which forbid the use of public funds for purely private purposes.[6]

---

[2]See Letter Opinion No. 97-049 (1997) at 1.

[3]See, e.g., Attorney General Opinions JM-824 (1987) at 2-3; JM-755 (1987) at 1-2; Letter Opinion No. 97-065 (1997) at 2.

[4]While Tax Code section 42.01(1)(A) authorizes a taxpayer to appeal an order of the appraisal review board determining the taxpayer's protest that the chief appraiser failed properly to notify the taxpayer to the district court, see Tax Code §§ 41.411(a), 42.21(a), we find no provision for payment of the chief appraiser's legal fees should the taxpayer sue the chief appraiser for failure to notify.

[5]See Attorney General Opinion DM-107 (1992) at 3 (and opinions cited therein).

[6]See id.; Attorney General Opinion JM-824 (1987) at 2. You suggest that paying the attorney fees of an appraisal district's employee who is the subject of what you call "nuisance litigation" may serve a public interest. You suggest that the threat of nuisance litigation, e.g., "'liens' and 'court documents' filed or issued by the 'Republic of Texas' people," is "of particular concern to persons employed by taxing authorities, who, because of the process itself, frequently find themselves in disputes arising from the performance of their official duties. These situations can occasionally lead to personal and political animosity or 'spite' litigation without any fault whatsoever of the public
(continued...)

Second, the board must determine that Mr. Warren committed the alleged action or omission that was the basis of the lawsuit while acting in good faith and within the scope of official duties.[7] The board need not determine, however, that the chief appraiser's course of action was correct.[8] Because these two determinations require the resolution of fact questions, they are beyond the scope of the opinion process. Resolution is more appropriately the board's province.

By concluding that a political subdivision may reimburse an officer's or employee's legal expenses in certain circumstances, we are overruling, to the extent they are inconsistent with this opinion, previous opinions of this office, including Attorney General Opinion DM-107 and Letter Opinion Nos. 97-065, 97-049, and 90-93,[9] that conclude a governmental body may not reimburse

---

[6](...continued)
employee or official." This office previously has acknowledged that a governmental body's interest in protecting employees from vexatious lawsuits may be sufficiently public to warrant paying employees' attorney fees:

> We suppose that it is not unknown for . . . suits, on some occasions, merely to be vexatious, and perhaps even wholly mischievious [sic]. The suits are initiated by persons whose judgment and motive are sometimes unfathomable. The purely private decision to sue a public servant is not subject to the checks-and-balances so much a part of the nature and functioning of a political entity in its day-to-day operations. Public servants subject to suits by private parties for official acts are apt to be distracted from their duties by the litigation, and concommitant [sic] worries about meeting the costs of a legal defense. Fear of boundless litigation, especially if it proves to be frivolous after a lengthy and expensive process, may make public servants timid in the discharge of their duties.

Attorney General Opinion JM-755 (1987) at 5.

[7]See Attorney General Opinions DM-107 (1992) at 3; JM-824 (1987) at 3.

[8]See Attorney General Opinions DM-107 (1992) at 3; JM-824 (1987) at 3.

[9]See Attorney General Opinion DM-107 (1992) at 4; Letter Opinion Nos. 97-065 (1997) at 3; 97-049 (1997) at 2; 90-93 (1990) at 2-3.

an officer or employee for legal expenses in any case.[10]  On the other hand, our conclusion today affirms two prior opinions of this office: Attorney General Opinions MW-252 and M-736.[11]

Our statement in Letter Opinion No. 90-93 implying that the common law does not authorize a political subdivision to "reimburse a public official or employee" after that person has incurred legal expenses is, in truth, contrary to the common law.[12]  The common law actually permits a political subdivision to reimburse an employee for legal bills.[13]  Thus, unless expressly forbidden by charter, statute, or constitutional provision, a political subdivision has the implied power, exercisable upon discretion, to provide suitable means of protecting employees against litigation arising from job-related acts.[14]  "Protecting" an employee may include hiring and paying an attorney to defend the employee if the political subdivision reasonably believes that providing a defense is in the public interest and the employee was acting within the scope of authority in the performance

---

[10]Of course, there are policy arguments supporting the conclusion that reimbursement is not appropriate. First, a political subdivision should exercise some control over who the attorney is and what fees are charged. Then, too, the Texas Legislature has addressed reimbursement in at least three statutes, each requiring a political subdivision's pre-trial approval of counsel. Section 157.901(b) of the Local Government Code states that, under the appropriate circumstances, "the official or employee is *entitled* to have the commissioners court of the county employ and pay private counsel." (Emphasis added.)  Moreover, other provisions permitting or requiring reimbursement contemplate a political subdivision's authorization of counsel prior to litigation. It is clear from these provisions the legislature is aware that public employees run the risk of being sued as a result of performing their public duties, and it has provided a remedy.

But we are not persuaded by these policy arguments. First, the authority of a political subdivision to ratify and reimburse attorney fees is discretionary: a political subdivision is under no obligation to hire and pay an attorney or to reimburse an employee for legal bills; it has discretion to do either or neither. If a political subdivision's governing body disapproves the choice of attorney or finds his fees unreasonable, it has discretion to do nothing. Additionally, the indemnification statutes have a single feature in common: each goes beyond the common law and requires, rather than permits, a political subdivision to provide legal counsel for an employee under the circumstances given. Nothing in the statutes repeals or supplants common-law protections. To the contrary, this office has concluded that Local Government Code section 157.901 "strengthens the rule by requiring a county to defend a public servant in a certain class of cases." Attorney General Opinion JM-755 (1987) at 3.

[11]*See* Attorney General Opinions MW-252 (1980) at 2; M-726 (1970) at 6.

[12]*See* Letter Opinion No. 90-93 (1990) at 2-3.

[13]*See* Attorney General Opinions MW-252 (1980) at 1-2; M-726 (1970) at 6-9.

[14]*City of Corsicana v. Babb*, 290 S.W. 736, 737 (Tex. Comm'n App. 1927, holding approved); Attorney General Opinion M-726 (1970) at 6; *see Rodgers v. County of Taylor*, 368 S.W.2d 794, 796 (Tex. Civ. App.--Eastland 1963, writ ref'd n.r.e.); *Chrestman v. Tompkins*, 5 S.W.2d 257, 260 (Tex. Civ. App.--Dallas 1928, writ ref'd).

of public duty.[15]  A political subdivision authorized to contract for an attorney's services prior to litigation subsequently may ratify such an agreement after litigation concludes.[16]

While we find no Texas case involving reimbursement of a public employee's legal bills, we believe it likely that the Texas Supreme Court would be persuaded by case law of jurisdictions applying the common-law rule to permit a political subdivision to ratify and reimburse an employee's legal bills if he or she were sued for acts done in the discharge of official duties.[17] Whereas other jurisdictions have faced the issue of reimbursing a public employee for legal expenses, Texas courts have been required only to find a city's authority to "employ an attorney [on behalf of a public employee], or to indemnify the [employee] for the payment of [attorney] fees."[18] Reimbursement has not been an issue in Texas indemnification cases, so there has been no reason for the courts to address it.  However, in *City of Corsicana v. Babb* the Texas Commission of Appeals cites as authority cases from other jurisdictions and treatises that explicitly permit ratification and reimbursement as a form of indemnification.[19]

We further believe that reimbursing an officer's or employee's legal expenses, incurred to defend against an action premised upon an on-the-job act or omission, does not as a matter of law contravene Texas Constitution article III, sections 44 and 53.[20]  Both sections 44 and 53 prohibit the state or a political subdivision from retrospectively granting an officer or employee additional compensation, fees, or allowances for services already rendered.[21]  Thus, for example, this office previously has concluded that a prosecutor's plan to use drug-seizure funds to award merit bonuses to his or her employees was unconstitutional because the bonuses had not been approved prior to the

---

[15]*Babb*, 290 S.W. at 737; *City Nat'l Bank v. Presidio County*, 26 S.W. 775, 777 (Tex. Civ. App. 1894, no writ); Attorney General Opinions JM-1276 (1990) at 11; MW-252 (1980) at 2, H-887 (1976) at 2-3; H-70 (1973) at 5; *see Rodgers*, 368 S.W.2d at 796-97.

[16]Attorney General Opinion M-726 (1970) at 6; *see Rodgers*, 368 S.W.2d at 797; Attorney General Opinion H-544 (1975) at 8.

[17]*See Machado v. Bal*, 31 Haw. 559 (Haw. 1930); *Messmore v. Kracht*, 137 N.W. 549 (Mich. 1912); *City of Moorhead v. Murphy*, 102 N.W. 219 (Minn. 1905); *State ex rel. Crow v. City of St. Louis*, 73 S.W. 623 (Mo. 1903); *Barnett v. Mayor of Paterson*, 6 A. 15 (N.J. 1886). Indeed, the Michigan Supreme Court has articulated the breadth of the common law: "[A] municipality [or other political subdivision] has the right to employ counsel to defend [an employee], or to appropriate funds for the necessary expenses incurred by him in such defense, or pay a judgment rendered against him." *Messmore*, 137 N.W. at 550 (quoting *Sherman v. Carr*, 8 R.I. 431 (R.I. 1867)); *accord Machado*, 31 Haw. at 562; *Murphy*, 102 N.W. at 219; *State ex rel. Crow*, 73 S.W. at 625; *Babb*, 290 S.W. at 737.

[18]*Babb*, 290 S.W. at 737; *see Chrestman*, 5 S.W.2d at 261; *City Nat'l Bank*, 26 S.W. at 777.

[19]*See Babb*, 290 S.W. at 737-38 (and citations therein).

[20]Reimbursing an officer's or employee's legal fees also raises concerns under article III, sections 50, 51, and 52 of the Texas Constitution. *But see supra* notes 6 and 7 and accompanying text.

[21]Like article III, section 52 of the Texas Constitution, and other sections, article III, section 53 was "intended to prevent the gratuitous grant of public funds to or for private persons or purposes." *Devon v. City of San Antonio*, 443 S.W.2d 598, 600 (Tex. Civ. App.--Waco 1969, writ ref'd).

time the services, on which the determination of merit was to be based, were rendered.[22] We think Attorney General Opinion H-402 is particularly instructive with respect to your question. This office there considered whether a commissioners court may approve back pay for an employee who was suspended because he had been indicted, but who was then exonerated and reinstated to his county employment.[23] After the employee was reinstated, the commissioners court adopted a policy permitting the county to reinstate with back pay an employee who had been suspended because of an indictment and then exonerated.[24] But because the county had no such policy at the time this particular employee was suspended and reinstated, this office concluded that the county could not now "back pay" the employee the wages he would have earned while he was suspended:[25] "To award back pay to a reinstated employee in the situation you describe when he is not entitled to it *under the terms of his employment*" (emphasis added) contravenes article III, section 53, the opinion concludes.[26] In our opinion among the terms of a public officer's or employee's office or employment is the common-law possibility of receiving, in certain circumstances, reimbursement from the employing governmental body for legal fees.[27] (We assume the employing governmental body had not adopted a policy forbidding it to reimburse an officer's or employee's legal fees.)

We think it is appropriate here to answer your eighth question: whether our conclusion depends upon the fact that the chief appraiser indicted ultimately was acquitted. As we suggested above, that fact does not affect our conclusion. Rather, the relevant determinations under the common law are whether paying for the legal representation serves a public, not purely private, interest and whether the conduct that was the basis of the legal action was taken in good faith and was within the scope of an official duty.

Your second question asks whether, if we conclude that the appraisal district's board may not vote to reimburse Mr. Warren's attorney fees, the appraisal district or any other governing body may adopt a policy that the governing body will "assume liability for, and . . . pay . . . attorney fees incurred in defending" an officer or employee of the appraisal district, including the appraisal review

---

[22]*See* Attorney General Opinion JM-1253 (1990) at 2-3. *Cf. Douthit v. Ector County*, 740 S.W.2d 16, 18 (Tex. App.--El Paso 1987, writ denied) (finding certain compensation or benefits constitutional under article III, section 53); *City of Orange v. Chance*, 325 S.W.2d 838, 840 (Tex. Civ. App.--Beaumont 1959, no writ) (same); *City of Wichita Falls v. Cox*, 300 S.W.2d 317, 321 (Tex. Civ. App.--Fort Worth 1957, writ ref'd n.r.e.) (same); Attorney General Opinion DM-129 (1992) at 2-3 (same); Attorney General Opinion H-51 (1973) at 3 (same).

[23]*See* Attorney General Opinion H-402 (1974) at 1.

[24]*See id.* at 2.

[25]*See id.*

[26]*See id.* at 4.

[27]As we have discovered, the common law authorizes a governmental body to reimburse an officer's or employee's legal expenses in certain circumstances. Attorney General Opinion H-402, by contrast, discusses awarding back pay to an employee for the period during which the employee was suspended. We know of no common-law right to back pay in the situation described in that opinion. Consequently, a county policy was necessary before the county could award back pay.

board, against civil or criminal claims. We have concluded that the board may reimburse Mr. Warren's attorney fees, so long as the board makes the determinations we have listed. Accordingly, we will not address the particular policy you set out.

You ask third whether a policy standardizing the payment of attorney fees is a necessary prerequisite to the payment of attorney fees or whether the district board may make a determination to pay attorney fees in each particular case. As we have stated, the policy is unnecessary. Moreover, as we have suggested, the board, if it is to pay attorney fees at all, must make a case-by-case determination, considering the issues we have listed above. Nothing, of course, requires an appraisal district to pay an officer's or employee's attorney fees in any case.[28]

Fourth, you ask whether an agreement to pay attorney fees in a civil case may be distinguished from an agreement to pay fees in a criminal action. Generally, the common law distinguishes less between civil and criminal actions than between actions premised upon an officer's conduct within the scope of official duties and actions premised upon conduct beyond the bounds of official duties.[29] Nevertheless, an agreement to pay attorney fees in a civil action that comes within Civil Practice & Remedies Code chapters 101 or 102 is, we believe, governed by those chapters. Here, for instance, Civil Practice & Remedies Code sections 102.002(c)(1) and 102.004(a) would preclude the appraisal district from providing an attorney for Mr. Vernon if the landowners sued him for damages caused by the alleged official misconduct. Because the action was a criminal prosecution, however, Civil Practice and Remedies Code chapter 102 is inapplicable, and the common-law rule applies.

Fifth, you ask whether the appraisal district may pay attorney fees that accrue before the board adopts a policy. Again, we have concluded that a policy is unnecessary. Accordingly, we need not address this question further.

You ask sixth whether the appraisal district board may reimburse an officer or employee who incurred and paid attorney fees purportedly covered by the policy. Because we have concluded that a policy is unnecessary, we need not address this question further.

Finally, we understand you to ask whether the board may pay Mr. Warren's attorney fees although he is no longer employed by the board. We do not think the fact that Mr. Warren is no longer a district employee makes any difference. Rather, in our opinion, the important fact is that the conduct for which Mr. Warren was brought to court occurred while he was the appraisal district's chief appraiser.

---

[28]*See* Attorney General Opinion JM-1276 (1990) at 11.

[29]It is more common in the criminal context, however, for a governmental body to find that an officer's or employee's conduct is beyond the scope of official duties.

## S U M M A R Y

The board of directors of an appraisal district may reimburse its chief appraiser's attorney fees if it is authorized to do so by statute or under the common law. An appraisal district is not statutorily authorized to reimburse its chief appraiser's legal fees if the chief appraiser is indicted for official misconduct for an alleged failure to properly notify taxpayers of a change in use in their land. On the other hand, no statute forbids an appraisal district to reimburse the chief appraiser's legal fees.

The common law permits an appraisal district to reimburse an officer's or employee's legal fees (1) if the board determines that paying for the legal representation serves a public interest, not just the officer's or employee's private interest; and (2) if the board determines that the officer or employee committed the alleged act or omission that was the basis of the suit in good faith and within the scope of his or her official duties. Whether the chief appraiser ultimately prevailed in the action is irrelevant to the board's decision to pay attorney fees. To the extent they are inconsistent with this conclusion, Attorney General Opinion DM-107 (1992) and Letter Opinion Nos. 97-065 (1997), 97-049 (1997), and 90-93 (1990) are overruled.

An appraisal district board of directors need not adopt a policy regarding the payment of officers' and employees' legal expenses before it may agree to pay the expenses as they accrue.

An appraisal district's common-law authority to pay an officer's or employee's attorney fees may be limited by statute. For instance, Civil Practice and Remedies Code chapters 101 or 102 may regulate the appraisal district's payment of attorney fees in certain civil actions.

The fact that an officer or employee who is being sued or the subject of a criminal action for conduct that allegedly occurred during the course of the

officer's or employee's work for the appraisal district is no longer an officer or employee of the district is irrelevant to the board's consideration of whether it will pay attorney fees.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General